# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

CHAMBERS OF
CHRISTOPHER J. BURKE.
U. S. MAGISTRATE JUDGE

# FILED

FEB 1 4 2012

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

UNIT 28
844 KING STREET
U.S. COURTHOUSE
WILMINGTON, DELAWARE 19801
(302) 573-4591

February 9, 2012

Phillip Burton United States Courthouse
Attn: Office of the Clerk
450 Golden Gate Avenue, 16th Floor
San Francisco, CA 94102-3434

*CR 11-573 JSW*

RE: United States v. Robert J. Maegerle, 1:12-mj-00022

Dear Clerk:

Pursuant to an order transferring the above captioned case to your Court, enclosed please find the following items:

(X)     Certified copy of the docket sheet;
( )     Certified copy of the Order of Transfer;
( X )   Original case file documents (if applicable);

Please note that the electronic case filings can be accessed through PACER by selecting the CM/ECF link on our web site at www.ded.uscourts.gov.

Please acknowledge receipt of the above items on the attached copy of this letter.

Sincerely,

Peter T. Dalleo, Clerk of Court

By: _____
       Deputy Clerk

Enc.

**I hereby acknowledge receipt of the above listed items on** _____.

_____
**Signature**

**MAGISTRATE'S MINUTE SHEET**

DATE _February 8, 2012_

U.S.A. v. _Robert J. Maegerle_

JUDGE _Burke_

CASE NO. _12-22M_

CLERK _Krett_

AUSA _Robert Kravetz, Esq_

INTERPRETER: _____

DEFENSE COUNSEL _Greg Morris, Esq._

LANGUAGE: _____

TAPE NO._____ FROM_____ TO _____

USPO: _Butch Williams_

TAPE NO._____ FROM_____ TO _____

TIME _3:10_ TO _3:31_ TIME____ TO _____

_✓_ INITIAL APPEARANCE _Rule 5_   BAIL REC. _100,000 unsecured_

____ BAIL HEARING   BAIL SET _100,000 Unsecured_

____ ARRAIGN.>> DEFT. ENTERED PLEA OF: GUILTY _____ NOT GUILTY _____
TO >> _____

____ REQUEST APPOINT. OF COUNSEL:   GRANTED   DENIED
APPOINT. OF_____

____ DETENTION HEARING   BAIL SET_____

____ PRELIMINARY HEARING   PROBABLE CAUSE FOUND - YES   NO

____ REVOCATION HEARING   SUPERVISION REVOKED - YES   NO

_✓_ REMOVAL HEARING

____ **NEXT APPEARANCE:** _____ **FOR** _____

____ TRIAL: GUILTY   NOT GUILTY   PRE-SENTENCE

SENTENCE: _____ _____ _____ _____ _____
FINE   SP.ASSESS.   PROB.   RESTIT.   IMPRISONMENT

## NOTES:

Gout. moves to have Deft. released on 100,600.00 Unsecured bond with conditions.

1   MELINDA HAAG (CABN 132612)
    United States Attorney

2

3

4

5

6

7

**FILED**

FEB - 7 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,            )   No. CR 11-0573 JSW
                                         )
12            Plaintiff,                 )   VIOLATIONS: 18 U.S.C. § 1831(a)(5) –
                                         )   Conspiracy to Commit Economic
13        v.                             )   Espionage; 18 U.S.C. § 1832(a)(5) –
                                         )   Conspiracy to Commit Theft of Trade
14  WALTER LIAN-HEEN LIEW,               )   Secrets; 18 U.S.C. § 1831(a)(4) –
        a.k.a. LIU YUANXUAN,             )   Attempted Economic Espionage; 18
15  CHRISTINA HONG QIAO LIEW,            )   U.S.C. § 1832(a)(4) – Attempted Theft
        a.k.a. QIAO HONG,                )   of Trade Secrets; 18 U.S.C. § 1832(a)(3)
16  ROBERT J. MAEGERLE,                  )   – Possession of Trade Secrets; 18 U.S.C.
    USA PERFORMANCE TECHNOLOGY,          )   § 1832(a)(2) – Conveying Trade Secrets;
17  INC.,                                )   18 U.S.C. § 2 – Aiding and Abetting; 18
    TZE CHAO,                            )   U.S.C. § 1512(k) – Conspiracy to
18      a.k.a. ZHI ZHAO,                 )   Tamper with Witnesses and Evidence; 18
    HOU SHENGDONG,                       )   U.S.C. § 1512(b)(1) – Witness
19  PANGANG GROUP COMPANY, LTD.,         )   Tampering; 18 U.S.C. § 1001(a)(2)
    PANGANG GROUP STEEL                  )   – False Statements; 18 U.S.C. § 2 –
20  VANADIUM & TITANIUM                  )   Aiding and Abetting; 18 U.S.C. §§ 1834
    COMPANY, LTD.,                       )   and 2323 – Economic Espionage
21  PANGANG GROUP TITANIUM               )   Forfeiture; 18 U.S.C. §§ 1834 and 2323
    INDUSTRY COMPANY, LTD., and          )   – Trade Secret Forfeiture; 18 U.S.C. §
22  PANGANG GROUP INTERNATIONAL          )   981(a)(1)(C) & 28 U.S.C. § 2461 –
    ECONOMIC & TRADING COMPANY,          )   Witness Tampering Forfeiture
23                                       )
           Defendants.                   )   (SAN FRANCISCO VENUE)
24                                       )
                                         )   [UNDER SEAL]
25                                       )

26

27

28

## SUPERSEDING INDICTMENT

The Grand Jury charges that at all times relevant to this Superseding Indictment:

## INTRODUCTORY ALLEGATIONS

1.      The government of the People's Republic of China (PRC) publicly identified the development of chloride-route titanium dioxide (TiO2) production technology as a scientific and economic priority.  Economic growth in the PRC had created significant demand for TiO2, and because PRC companies had not been able to develop clean, efficient TiO2 production technology, the PRC was a net importer of TiO2 from western countries.  Chloride-route TiO2 production technology was closely held by western companies, including E.I. du Pont de Nemours & Company (DuPont), which had invented and improved the technology through intensive research and development over many years.  DuPont was not willing to sell or license its proprietary technology to PRC companies to build TiO2 factories in the PRC.

2.      Aware of the PRC's national priority and the barriers placed by DuPont on access to the technology, at the times set forth below, individuals named in this Superseding Indictment obtained TiO2 trade secrets belonging to DuPont and conveyed information containing those trade secrets to companies controlled by the PRC government without authorization from DuPont.

### Defendants in the United States

3.      Defendant WALTER LIAN-HEEN LIEW, also known as LIU YUANXUAN (WALTER LIEW), was a resident of California, and an owner and executive of USA PERFORMANCE TECHNOLOGY, INC. (USAPTI) and its predecessor companies, LH Performance, Inc. and Performance Group (USA), Inc.  WALTER LIEW was born in Malaysia in 1957, emigrated to the United States in 1984, and became a naturalized citizen of the United States in 1993.

4.      Defendant CHRISTINA HONG QIAO LIEW, also known as QIAO HONG (CHRISTINA LIEW), was a resident of California, and an owner and executive of USAPTI and its predecessor companies, LH Performance, Inc. and Performance Group

SUPERSEDING INDICTMENT
CR 11-0573 JSW **(UNDER SEAL)**                    2

1  (USA), Inc. CHRISTINA LIEW was born in the PRC in 1962, emigrated to the United
2  States in 1993, and became a naturalized citizen of the United States in 1997. WALTER
3  LIEW was married to CHRISTINA LIEW.

4      5.    Defendant USAPTI was a California corporation headquartered in Oakland,
5  California that offered engineering consulting services. USAPTI succeeded to the rights
6  and obligations of its predecessor companies, LH Performance, Inc. and Performance
7  Group (USA), Inc., with respect to those companies' TiO2 business, and the business
8  names were sometimes used interchangeably.

9      6.    Defendant TZE CHAO, also known as ZHI ZHAO, was a resident of Delaware
10  and an owner of two consulting firms: Cierra Technology, Inc. (Cierra), incorporated in
11  the State of Delaware, and Zhi Hua Technology Co., Ltd. (Zhi Hua), a Hong Kong-based
12  entity. CHAO was born in China in 1934, emigrated to the United States in 1967, and
13  became a naturalized citizen of the United States in December 1972. CHAO was a
14  DuPont employee from 1966 to 2002.

15      7.    Defendant ROBERT J. MAEGERLE was a resident of Delaware and an owner
16  of a consulting firm, Pinewater Designs, Inc. MAEGERLE was a process engineer,
17  among other things, for DuPont from 1956 to 1991.

18                            Defendants in the PRC

19      8.    The State-Owned Assets Supervision and Administration Commission of the
20  State Council (SASAC) was a special government agency of the PRC. It was under the
21  direct control of the State Council, the PRC's highest government authority. According
22  to its website, SASAC "performs investor's responsibilities, supervises and manages the
23  state-owned assets of the enterprises under the supervision of the Central Government . . .
24  and enhances the management of the state-owned assets." The appointment of senior
25  officers and directors of central state-owned assets was controlled by the Organization
26  Department of the Communist Party of China Central Committee and managed by
27  SASAC.

28  ///

9.   Defendant PANGANG GROUP COMPANY LIMITED (PANGANG GROUP), also known as Panzhihua Iron and Steel (Group) Co., Ltd., was a state-owned enterprise controlled by SASAC and located in Sichuan Province, PRC. The Chairman and certain other senior managers of PANGANG GROUP were officials of the Communist Party of China. In or about 2002, PANGANG GROUP acquired, through a joint venture, Jinzhou Titanium Industry Co., Ltd. (PANGANG Jinzhou), which operated a small TiO2 manufacturing facility in Liaoning Province, PRC.

10.   PANGANG GROUP controlled the following subsidiaries (referred to collectively in this Superseding Indictment as the "PANGANG GROUP companies"):

a.   Defendant PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY LIMITED (PGSVTC), which shared senior management with PANGANG GROUP.

b.   Defendant PANGANG GROUP TITANIUM INDUSTRY COMPANY LIMITED (PANGANG GROUP TITANIUM) was formed in 2007 by PANGANG GROUP to develop a large chloride-route TiO2 factory in Sichuan Province. PANGANG GROUP TITANIUM was owned and controlled by PANGANG GROUP and PGSVTC.

c.   Defendant PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY (PIETC) was the financing arm of PANGANG GROUP. It was responsible for securing the financing and handling the economic affairs of projects conducted by PANGANG GROUP. PIETC was owned and controlled by PANGANG GROUP and PGSVTC.

11.   Defendant HOU SHENGDONG was a citizen of the PRC and worked for the PANGANG GROUP and PANGANG GROUP TITANIUM where he served as Vice Director of the Chloride Process TiO2 Project Department.

### DuPont Trade Secrets and Confidentiality Protections

12.   DuPont was a company headquartered in Wilmington, Delaware that manufactured TiO2, a commercially valuable white pigment that was used in a large number of materials ranging from paints to plastics to paper. DuPont manufactured TiO2

1  at plants in the United States, Mexico, and Taiwan using proprietary technology and sold

2  it throughout the world in interstate and foreign commerce, including in the PRC.

3  DuPont was the world's largest producer of TiO2 pigment, and its TiO2 accounted for

4  approximately one-fifth of all world-wide TiO2 sales.

5      13.  DuPont invented the chloride-route process for manufacturing TiO2 in the 1940s

6  and has refined this process over time. The production of TiO2 through the chloride-

7  route is a complex manufacturing process, and DuPont has been continually working to

8  improve its process since its invention. Through its seventy years of experience, research

9  and development, DuPont has developed a proprietary TiO2 process that provides DuPont

10 with a competitive advantage in the international marketplace.

11      14.  DuPont's TiO2 technology included, but was not limited to, the following trade

12 secrets:

13      a.   **Trade Secret 1**: The complete DuPont chloride-route process to

14 manufacture TiO2. Trade Secret 1 includes, but is not limited to, Trade Secrets 2 through

15 5 set forth below.

16      b.   **Trade Secret 2**: DuPont Drawing No. W1245258, titled "Edge Moor Plant

17 Oxidation W/RPS System Drawing." This drawing, marked with the DuPont oval logo

18 trademark, explicitly stated that the "information and know-how [on the drawing] may

19 not be used nor the drawing reproduced without the written permission of DuPont." The

20 drawing provided information about TiO2 oxidation area process, including detailed

21 process flow descriptions for each major stream within the process, including stream

22 capacities, chemical compositions, temperatures, pressures, and physical states. The

23 drawing included details related to pipeline sizes, automatic and manual valve sizes and

24 locations, detailed instrumentation requirements, and safety relief devices.

25      c.   **Trade Secret 3**: DuPont Accession Report No. 18135, titled "Improved

26 Mixing Correlation for the TiCl4 Oxidation Reaction Computer Model," dated September

27 7, 1994, which appended a mathematical equation, referred to as the "Diemer

28 correlation," and related code in the Fortran language for a computer model. The

SUPERSEDING INDICTMENT
CR 11-0573 JSW **(UNDER SEAL)**                    5

1   correlation, which enabled the calculation of the mixing time and distance required for the

2   completion of the oxidation process for any DuPont reactor under any set of process

3   conditions, incorporated historical operating data from DuPont's production lines and its

4   oxidation science. On its cover page, the report was marked "DuPont Confidential – use

5   and dispose per DISO [DuPont Information Security Organization] policy," and "[t]his

6   report contains confidential information and each holder is responsible for its

7   safekeeping. When no longer needed, please destroy or dispose of in conformance with

8   PIP [Proprietary Information Protection] Guidelines."

9       d.   **Trade Secret 4**: DuPont Flow Sheet No. EK2411, titled "Edge Moor

10  Pigments Plant Flow Sheet – Reaction Area," with handwritten notations. This flow

11  sheet, bearing the DuPont oval logo trademark, was marked "DuPont Confidential –

12  Special Control," and provided that the "employee receiving this registered print will sign

13  and print the attached acknowledging card, will properly safeguard this print and will be

14  held personally accountable for this print." The flow sheet contained information about

15  the TiO2 reaction area process, *e.g.*, the process of treating ores with chlorine gas,

16  including the inter-connectivity of all major streams between the reaction area equipment,

17  which illustrates where and how DuPont injects chemical additives, fuel, feedstocks,

18  purge gases and coolants to the process. This flow sheet also included roughly 30

19  alphanumeric handwritten references to a proprietary, internally-commissioned computer

20  simulation model on the ASPEN-PLUS® platform, known as the Reaction Aspen-Plus

21  (RAP) model, which was described in a separate confidential DuPont technical report.

22  The handwritten references matched the specific nomenclature used for the RAP model,

23  which was created for plant optimization projects and capacity expansions.

24      e.   **Trade Secret 5**: DuPont Document EM-C-8510-0148, titled "60,000

25  Metric Tons Per Year Scope/Basic Data," dated October 31, 1985, addressed to R.J.

26  MAEGERLE (the "Basic Data Document"). This 407-page document, which was

27  designated "Confidential – Special Control," and issued in numbered copies, provided the

28  scope and basic data for DuPont's then-planned chloride-route plant in Taiwan, which

SUPERSEDING INDICTMENT
CR 11-0573 JSW **(UNDER SEAL)**                    6

1   later opened in Kuan Yin, Taiwan. It contained the process and equipment information
2   necessary to design a greenfield (*e.g.*, a plant built from scratch at an undeveloped site),
3   world-class production scale, integrated chloride-route TiO2 production line. The Basic
4   Data Document's security statement provided that the report is "highly confidential" and
5   "[m]uch of the report data are considered in the 'trade secret' category and should not be
6   released to vendor representatives and non-Company personnel." The Basic Data
7   document was itself a trade secret and it contained numerous discrete trade secrets within
8   in it.

9       15.   DuPont protected the confidential information surrounding its TiO2 technology,
10  including its trade secrets, to prevent unauthorized use or disclosure, by a variety of
11  measures, including, but not limited to:

12      •   limiting visitor access to its TiO2 facilities;
13      •   transmitting, receiving, and destroying confidential information in a secure
14          manner;
15      •   requiring employees to execute non-disclosure agreements;
16      •   requiring separating employees to certify that they had returned all
17          confidential or secret DuPont materials;
18      •   compartmentalizing information surrounding the TiO2 process and access
19          to it;
20      •   requiring permission to access data systems that contain TiO2
21          documentation - including drawings, equipment specifications, instrument
22          specifications, logic diagrams, standard operation procedures, maintenance
23          work practices, technology reports, etc.;
24      •   sending letters to former DuPont employees and/or competing companies
25          that hired former DuPont employees regarding the protection of its trade
26          secrets; and
27      •   maintaining physical security measures in and around TiO2 production
28          facilities, including fences, gates, locks, guard facilities, surveillance, escort

1   requirements, identification badges, and prohibitions on photography and

2   videotaping.

3

4   <u>COUNT ONE</u>:   (18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage)

5       16.   The allegations contained in Paragraphs 1 through 15 are re-alleged and

6   incorporated as if fully set forth herein.

7       17.   Beginning in or about 1998, and continuing to in or about October 2011, in the

8   Northern District of California and elsewhere, defendants

9                   WALTER LIEW,
                CHRISTINA LIEW,

10                  USAPTI,
                TZE CHAO,

11                  HOU SHENGDONG,
                PANGANG GROUP,

12                  PGSVTC,
                PANGANG GROUP TITANIUM, and

13                  PIETC,

14  together with others known and unknown to the Grand Jury, knowingly combined,

15  conspired and agreed to:

16      a.   knowingly and without authorization copy, duplicate, sketch, draw, alter,

17  photocopy, replicate, transmit, deliver, send, communicate, and convey trade secrets

18  belonging to DuPont; and

19      b.   knowingly receive, buy and possess trade secrets belonging to DuPont,

20  knowing the same to have been stolen, appropriated, obtained and converted without

21  authorization;

22  intending and knowing that the offenses would benefit a foreign government, namely the

23  PRC, and foreign instrumentalities, namely PANGANG GROUP, PGSVTC, PANGANG

24  GROUP TITANIUM, and PIETC, in violation of Title 18, United States Code, Sections

25  1831(a)(2) and (a)(3).

26  Manner and Means of the Conspiracy

27      18.   In order to develop chloride-route $TiO_2$ production capabilities and circumvent

28  DuPont's restriction on its proprietary technology, companies owned and controlled by

the PRC government and employees of those companies, including the PANGANG
GROUP companies named in this Superseding Indictment, attempted to illegally obtain
technology that had been developed by DuPont.

19. In the 1990s, WALTER LIEW learned that the government of the PRC had
prioritized the development of chloride-route TiO2 technology. By the beginning of
1998, WALTER LIEW had assembled a team of former DuPont employees, including
MAEGERLE and others, to assist him in his efforts to convey DuPont's TiO2 technology
to entities in the PRC.

20. WALTER LIEW executed contracts with state-owned entities in the PRC for
chloride-route TiO2 projects that relied on the transfer of illegally obtained DuPont
technology, including: (a) a $5,600,000 contract in 1998 with the import and export
company of Chengde Iron & Steel Group; (b) a $6,180,000 contract in 2005 with
PANGANG Jinzhou for a 30,000 metric tons per year (MTPY) project; and (c) a
$17,800,000 contract in 2009 with PIETC and PANGANG GROUP TITANIUM for a
100,000 MTPY project.

21. MAEGERLE had detailed knowledge of DuPont's TiO2 technology and
expertise in building TiO2 production lines. In furtherance of the contracts entered into
by WALTER LIEW, MAEGERLE provided WALTER LIEW and USAPTI with DuPont
information, including information contained in Trade Secret 5.

### PANGANG GROUP Projects

22. In approximately 2003, PANGANG Jinzhou, a subsidiary of PANGANG
GROUP, decided to build a larger, more efficient 30,000 MTPY chloride-process plant.
WALTER LIEW wrote letters in 2003 and 2004, claiming to possess the complete TiO2
process technology and attempting to sell his services to PANGANG Jinzhou to design its
new factory.

23. In March 2004, PANGANG GROUP hired CHAO as a consultant because of his
experience with and knowledge of DuPont's TiO2 technology. At PANGANG GROUP's
instruction, CHAO contacted WALTER LIEW and asked LIEW about his chloride-route

1  TiO2 technology.

2      24.  As part of the negotiation process for the PANGANG Jinzhou contract,

3  WALTER LIEW also provided PANGANG Jinzhou with numerous photographs of

4  DuPont facilities, which revealed proprietary and confidential aspects of the

5  manufacturing process.  WALTER LIEW obtained these photographs from MAEGERLE

6  who was not authorized to take or disseminate them outside DuPont.

7      25.  In or about 2008, PANGANG GROUP put out a request for proposal for a

8  100,000 MTPY chloride-route TiO2 project in Chongqing, PRC.  Both USAPTI and

9  Cierra (CHAO's company) submitted bids. No other engineering firm bid on the project.

10  In their efforts to obtain the contract, both USAPTI and Cierra represented to PANGANG

11  GROUP that they possessed DuPont technology.

12      26.  Throughout 2008, WALTER LIEW and MAEGERLE for USAPTI and CHAO

13  for Cierra provided detailed information to PANGANG GROUP regarding the design and

14  construction of the new facility.  During these technology exchanges, PANGANG

15  GROUP employees, including HOU SHENGDONG and an official from PANGANG

16  GROUP TITANIUM, asked WALTER LIEW and CHAO for DuPont blueprints and the

17  names of former DuPont employees who would work on the project.

18      27.  In 2009, PANGANG GROUP hired USAPTI to design the project in Chongqing.

19  The parties to the contract were USAPTI, PANGANG GROUP, and PIETC, and the

20  beneficiary of the contract was PANGANG GROUP's subsidiary, PANGANG GROUP

21  TITANIUM.

22      28.  Following the execution of the contract for the 100,000 MTPY project, USAPTI,

23  PANGANG GROUP TITANIUM, and PIETC had a series of meetings in San Francisco

24  and the PRC to advance the project.  At various times, WALTER LIEW, CHRISTINA

25  LIEW, MAEGERLE, and others attended meetings on behalf of USAPTI, and HOU

26  SHENGDONG and others attended meetings on behalf of PANGANG GROUP

27  TITANIUM.

28  ///

29. The basic design information USAPTI delivered to PANGANG GROUP TITANIUM in August 2009 contained numerous features based on technology directly misappropriated from DuPont. At the request of an official from PANGANG GROUP TITANIUM, CHAO reviewed USAPTI's designs in China in September 2009. CHAO prepared a report for PANGANG GROUP TITANIUM with specific suggestions for improving USAPTI's designs. CHAO's suggestions relied, in part, on DuPont's trade secrets, which he included in his report.

30. Between July 6, 2009 and July 6, 2011, PIETC paid USAPTI (and its predecessor, Performance Group) $12,578,461 for work on the 100,000 MTPY project.

31. Proceeds from the sale of DuPont technology to PANGANG GROUP were paid to WALTER LIEW, CHRISTINA LIEW, and USAPTI through letters of credit and letters of guarantee established at various Chinese banks. To obtain this money, WALTER LIEW, CHRISTINA LIEW, and USAPTI drew down on the letters of credit and letters of guarantee through Mega International Commercial Bank in San Jose, California. WALTER LIEW and CHRISTINA LIEW wired millions of dollars in proceeds from PANGANG GROUP to CHRISTINA LIEW's relatives in the PRC through bank accounts in Singapore and elsewhere.

### Overt Acts

32. In furtherance of the conspiracy and to effect its objects, defendants committed the following overt acts, among others, in the Northern District of California and elsewhere:

33. On or about March 15, 1998, MAEGERLE sent a facsimile to WALTER LIEW that contained proprietary and confidential information about DuPont's TiO2 plant costs and personnel data, including information from Trade Secret 5.

34. On or about October 8, 2005, MAEGERLE emailed WALTER LIEW a series of photographs from various DuPont facilities that contained proprietary and confidential information about DuPont technologies associated with its chloride-route TiO2 process.

///

SUPERSEDING INDICTMENT
CR 11-0573 JSW **(UNDER SEAL)**                11

35. On or about November 25, 2005, WALTER LIEW on behalf of Performance Group (USA), Inc. entered into a $6,180,000 contract on the 30,000 MTPY chloride-route TiO2 project with PIETC on behalf of PANGANG Jinzhou.

36. On or about April 17, 2008, WALTER LIEW directed Mega Bank to wire $759,982 to an account at the Development Bank of Singapore (DBS) in the name of Huadong Equipment Solutions, Pte, Ltd. (Huadong), over which WALTER LIEW had signature authority.

37. On or about May 29, 2008, WALTER LIEW directed DBS to wire $750,000 from the Huadong account in Singapore to an HSBC in account in Hong Kong belonging to CHRISTINA LIEW's father, a resident of the PRC, over which WALTER LIEW had signature authority.

38. On or about May 30, 2008, WALTER LIEW directed the transfer of approximately $670,000 from the HSBC account of CHRISTINA LIEW's father into a deposit account.

39. On or about June 2, 2008, employees of PANGANG GROUP companies, including HOU SHENGDONG, agreed that PANGANG GROUP would work with Cierra and CHAO if they employed former DuPont employees and possessed blueprints for DuPont's TiO2 plants.

40. On or about July 15, 2008, WALTER LIEW and CHRISTINA LIEW informed PANGANG GROUP TITANIUM that their drawings would replicate DuPont's DeLisle plant.

41. On or about August 22, 2008, MAEGERLE provided a USAPTI consultant with electronic copies of confidential, proprietary DuPont documents during a business trip to the PRC, including Trade Secret 2, Trade Secret 4, and a set of the photographs described in Paragraph 34.

42. On or about October 25, 2008, MAEGERLE emailed WALTER LIEW specific information from Trade Secret 5 and stated that "[t]he Jinzhou specifications were scaled down" from information from Trade Secret 5.

43. In or about July 2009, MAEGERLE drafted a three-page document entitled, "100K T/Y TiO2 CHLORINATOR DESIGN," which referenced specific confidential, proprietary data contained in the Basic Data Document (Trade Secret 5), which he used to scale up for the 100,000 MTPY project.

44. On or about September 3, 2009, MAEGERLE sent WALTER LIEW an email containing a specific and confidential figure from Trade Secret 5.

45. On August 8, 2010, USAPTI executed a $796,000 contract with PIETC for PANGANG GROUP Chongqing Titanium Industry Co., Ltd. to procure equipment for the 100,000 MTPY project.

46. In or about November 2010, WALTER LIEW provided a portion of Trade Secret 3 to a USAPTI employee.

47. A USAPTI employee emailed himself portions of Trade Secret 3 on February 22, 2011, March 4, 2011, and March 8, 2011.

48. On or about July 19, 2011, WALTER LIEW and CHRISTINA LIEW concealed Trade Secret 2 and Trade Secret 4 at their residence in Orinda, California.

49. On or about July 19, 2011, CHRISTINA LIEW attempted to prevent law enforcement from gaining access to a safe deposit box at Bank of East Asia in Oakland, California that contained copies of Trade Secret 2 and 4 and the photographs referenced in Paragraph 34.

50. In or about October 2011, HOU SHENGDONG attempted to contact CHAO for additional assistance with the 100,000 MTPY project.

All in violation of Title 18, United States Code, Section 1831(a)(5).

COUNT TWO:    (18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets)

51. The allegations contained in Paragraphs 1 through 15 are re-alleged and incorporated as if fully set forth herein.

///

52. Beginning in or about 1998, and continuing to in or about October 2011, in the Northern District of California and elsewhere, defendants

> WALTER LIEW,
> CHRISTINA LIEW,
> ROBERT MAEGERLE,
> USAPTI,
> HOU SHENGDONG,
> PANGANG GROUP,
> PGSVTC,
> PANGANG GROUP TITANIUM, and
> PIETC,

together with others known and unknown to the Grand Jury, knowingly combined, conspired and agreed to:

a. knowingly and without authorization copy, duplicate, sketch, draw, alter, photocopy, replicate, transmit, deliver, send, communicate, and convey trade secrets belonging to DuPont; and

b. knowingly receive, buy and possess trade secrets belonging to DuPont, knowing the same to have been stolen, appropriated, obtained and converted without authorization;

intending to convert a trade secret that is related to and included in a product, namely $TiO_2$, that is produced for and placed in interstate and foreign commerce, to the economic benefit of someone other than DuPont, and intending and knowing that the offense would injure DuPont, in violation of Title 18, United States Code, Sections 1832(a)(2) and (a)(3).

## Manner and Means of the Conspiracy

53. The objects of the conspiracy were carried out, in part, as alleged in Paragraphs 18 through 31 above.

## Overt Acts

54. In furtherance of the conspiracy and to effect its objects, defendants committed the overt acts alleged in Paragraphs 32 through 50, among others, in the Northern District of California and elsewhere.

All in violation of Title 18, United States Code, Section 1832(a)(5).

COUNT THREE:   (18 U.S.C. § 1831(a)(2) and (4) – Attempted Economic Espionage)

55.   The allegations contained in Paragraphs 1 through 15 and 18 through 50 are re-alleged and incorporated as if fully set forth herein.

56.   Beginning on a date unknown, but no later than 2008, and continuing to on or about July 19, 2011, in the Northern District of California and elsewhere, defendants

> WALTER LIEW,
> CHRISTINA LIEW, and
> USAPTI

knowingly and without authorization attempted to copy, duplicate, sketch, draw, alter, photocopy, replicate, transmit, deliver, send, communicate, and convey a trade secret belonging to DuPont, specifically Trade Secret 1, intending and knowing that the offenses would benefit a foreign government, namely the PRC, and foreign instrumentalities, namely PANGANG GROUP, PGSVTC, PANGANG GROUP TITANIUM, and PIETC, in violation of Title 18, United States Code, Sections 1831(a)(2).

All in violation of Title 18, United States Code, Section 1831(a)(4).

COUNT FOUR:   (18 U.S.C. § 1831(a)(3) and (4) – Attempted Economic Espionage)

57.   The allegations contained in Paragraphs 1 through 15 and 18 through 50 are re-alleged and incorporated as if fully set forth herein.

58.   Beginning on a date unknown, but no later than 2008, and continuing to on or about October 2011, in the Northern District of California and elsewhere, defendants

> HOU SHENGDONG,
> PANGANG GROUP,
> PGSVTC,
> PANGANG GROUP TITANIUM, and
> PIETC

knowingly attempted to receive, buy, and possess a trade secret belonging to DuPont, specifically, Trade Secret 1, knowing it to have been stolen, appropriated, obtained, and converted without authorization, intending and knowing that the offense would benefit a foreign government, namely the PRC, and foreign instrumentalities, namely PANGANG GROUP, PGSVTC, PANGANG GROUP TITANIUM, and PIETC, in violation of Title

1 | 18, United States Code, Sections 1831(a)(3).

2 |      All in violation of Title 18, United States Code, Section 1831(a)(4).

3 | COUNT FIVE:     (18 U.S.C. § 1832(a)(2) and (4) – Attempted Theft of Trade Secrets)

4 |    59.  The allegations contained in Paragraphs 1 through 15 and 18 through 50 are re-

5 | alleged and incorporated as if fully set forth herein.

6 |    60.  Beginning on a date unknown, but no later than 2008, and continuing to on or

7 | about July 19, 2011, in the Northern District of California and elsewhere, defendants

8 |                           WALTER LIEW,

9 |                           CHRISTINA LIEW,
                          ROBERT MAEGERLE, and

10 |                           USAPTI

11 | knowingly and without authorization attempted to copy, duplicate, sketch, draw, alter,

12 | photocopy, replicate, transmit, deliver, send, communicate, and convey a trade secret

13 | belonging to DuPont, specifically Trade Secret 1, with the intent to convert the trade

14 | secret, which was related to and included in a product, specifically TiO2, that was

15 | produced for and placed in interstate and foreign commerce, to the economic benefit of

16 | someone other than DuPont, and intending and knowing that the offense would injure

17 | DuPont, in violation of Title 18, United States Code, Sections 1832(a)(2).

18 |      All in violation of Title 18, United States Code, Section 1832(a)(4).

19 |

20 | COUNT SIX:     (18 U.S.C. § 1832(a)(3) – Possession of Trade Secrets)

21 |    61.  The allegations contained in Paragraphs 1 through 15, 48, and 49 are re-alleged

22 | and incorporated as if fully set forth herein.

23 |    62.  On or about July 19, 2011, in the Northern District of California and elsewhere,

24 | defendants

25 |

26 |                           WALTER LIEW,
                          CHRISTINA LIEW, and

27 |                           USAPTI

28 | knowingly possessed a trade secret, specifically Trade Secret 2, knowing it to have been

1   stolen and appropriated, obtained, and converted without authorization, with the intent to

2   convert the trade secret, which was related to and included in a product, specifically

3   TiO2, that is produced for and placed in interstate and foreign commerce, to the economic

4   benefit of someone other than DuPont, and intending and knowing that the offense would

5   injure DuPont.

6        All in violation of Title 18, United States Code, Sections 1832(a)(3).

7

8   <u>COUNT SEVEN</u>:   (18 U.S.C. § 1832(a)(3) – Possession of Trade Secrets)

9        63.   The allegations contained in Paragraphs 1 through 15, 46, and 47 are re-alleged

10   and incorporated as if fully set forth herein.

11       64.   In or about 2010, in the Northern District of California and elsewhere,

12   defendants

13                          WALTER LIEW and
                            USAPTI
14

15   knowingly received and possessed a trade secret, specifically Trade Secret 3, knowing it

16   to have been stolen and appropriated, obtained, and converted without authorization, with

17   the intent to convert the trade secret, which was related to and included in a product,

18   specifically TiO2, that is produced for and placed in interstate and foreign commerce, to

19   the economic benefit of someone other than DuPont, and intending and knowing that the

20   offense would injure DuPont.

21       All in violation of Title 18, United States Code, Sections 1832(a)(3).

22

23   <u>COUNT EIGHT</u>:   (18 U.S.C. §§ 1832(a)(2) and 2 – Conveying Trade Secrets; Aiding
                        and Abetting)

24       65.   The allegations contained in Paragraphs 1 through 15, 21, and 42 through 44 are

25   re-alleged and incorporated as if fully set forth herein.

26   ///

27   ///

28   ///

SUPERSEDING INDICTMENT
CR 11-0573 JSW <u><b>(UNDER SEAL)</b></u>            17

1      66.  Between in or about 1998 to July 2011, in the Northern District of California and

2  elsewhere, defendants

3                      WALTER LIEW,

                    ROBERT MAEGERLE, and

4                      USAPTI

5  knowingly and without authorization copied, duplicated, sketched, drew, altered,

6  photocopied, replicated, transmitted, delivered, sent, communicated, and conveyed a trade

7  secret belonging to DuPont, specifically Trade Secret 5, with the intent to convert the

8  trade secret, which was related to and included in a product, specifically TiO2, that was

9  produced for and placed in interstate and foreign commerce, to the economic benefit of

10  someone other than DuPont, and intending and knowing that the offense would injure

11  DuPont, and did aid and abet such conduct.

12      All in violation of Title 18, United States Code, Sections 1832(a)(3) and 2.

13

14  <u>COUNT NINE:</u>    (18 U.S.C. § 1832(a)(3) – Possession of Trade Secrets)

15      67.  The allegations contained in Paragraphs 1 through 15, 48, and 49 are re-alleged

16  and incorporated as if fully set forth herein.

17      68.  On or about July 19, 2011, in the Northern District of California and elsewhere,

18  defendants

19                      WALTER LIEW,

                    CHRISTINA LIEW, and

20                      USAPTI

21  knowingly possessed a trade secret, specifically Trade Secret 4, knowing it to have been

22  stolen and appropriated, obtained, and converted without authorization, with the intent to

23  convert the trade secret, which was related to and included in a product, specifically

24  TiO2, that was produced for and placed in interstate and foreign commerce, to the

25  economic benefit of someone other than DuPont, and intending and knowing that the

26  offense would injure DuPont.

27      All in violation of Title 18, United States Code, Sections 1832(a)(3).

28  ///

1   <u>COUNT TEN:</u>        (18 U.S.C. § 1512(k) – Conspiracy to Tamper with Witnesses
2                          and Evidence)

3       69.   The factual allegations set forth in Paragraphs 1 through 15 and 18 through 50
4   are re-alleged and incorporated as if fully set forth herein.

5       70.   On or about April 6, 2011, DuPont filed a civil complaint in United States
6   District Court in San Francisco.  The complaint alleged that USAPTI, WALTER LIEW,
7   and J.L., a USAPTI employee (the "civil defendants"),  misappropriated trade secrets
8   from DuPont.  The federal civil complaint alleged that the civil defendants "wrongfully
9   obtained and possess confidential, proprietary, trade secret materials providing detailed
10  specifications for DuPont's Chloride-route titanium dioxide ('TiO2') pigment
11  manufacturing process."

12      71.   On or about and between April 6, 2011, and May 11, 2011, in the Northern
13  District of California and elsewhere, defendants

14                          WALTER LIEW,
                            ROBERT MAEGERLE, and
15                          USAPTI

16  knowingly conspired to commit violations of 18 U.S.C. § 1512(c).

17      72.   As part of the conspiracy, WALTER LIEW, MAEGERLE, and USAPTI
18  corruptly obstructed, influenced, and impeded an official proceeding, in violation of 18
19  U.S.C. § 1512(c)(2).

20      73.   Specifically, after DuPont filed the federal civil complaint, MAEGERLE emailed
21  WALTER LIEW for the purpose of assisting WALTER LIEW in responding to the
22  lawsuit and knowing that WALTER LIEW would use the information for that purpose.
23  MAEGERLE emailed materially false information about the source of the information
24  used for USAPTI's projects in the PRC and specifically stated that no information from
25  DuPont's Kuan Yin plant was used in the USAPTI designs, which was false and known
26  to be false to both MAEGERLE and LIEW.  MAEGERLE provided LIEW with
27  comments on specific paragraphs of the complaint.
28  ///

74. LIEW caused an answer to be filed to the federal civil complaint on or about May 11, 2011, which contained false statements, including the answer to paragraph 32 of the complaint that "Defendants have never misappropriated any information from DuPont or any of its locations, whether the Kuan Yin facility or otherwise."

All in violation of Title 18, United States Code, Section 1512(k).

COUNT ELEVEN:        (18 U.S.C. § 1512(b)(1) – Witness Tampering)

75. The factual allegations set forth in Paragraphs 1 through 15, 18 through 50, and 70 are re-alleged and incorporated as if fully set forth herein.

76. In or about April 2011, in the Northern District of California, defendant

WALTER LIEW

did knowingly intimidate, threaten, and corruptly persuade, and attempt to intimidate, threaten, and corruptly persuade, another person, specifically J.L., with the intent to influence, delay, and prevent the testimony of J.L. in an official proceeding.

77. WALTER LIEW, CHRISTINA LIEW, and USAPTI employed and paid at least two former DuPont employees for assistance in designing TiO2 manufacturing facilities for two or more customers in China. These employees were known to J.L. when he worked for USAPTI.

78. Specifically, after learning that he, USAPTI, and J.L. had been sued by DuPont in federal district court for misappropriation of trade secrets, WALTER LIEW met with J.L. and told J.L. that he should not say anything about other individuals who had worked with USAPTI – meaning the former DuPont employees – because it would not be good for J.L. or J.L.'s family.

All in violation of Title 18, United States Code, Section 1512(b)(1).

COUNT TWELVE:        (18 U.S.C. § 1512(b)(1) – Witness Tampering)

79. The factual allegations set forth in Paragraphs 1 through 15, 18 through 50, 77, and 78 are re-alleged and incorporated as if fully set forth herein.

80. In or about April 2011, in the Northern District of California, defendant

CHRISTINA LIEW

did knowingly intimidate, threaten, and corruptly persuade, and attempt to intimidate, threaten, and corruptly persuade, another person, specifically J.L., with the intent to influence, delay, and prevent the testimony of J.L. in an official proceeding.

81. Specifically, after learning that WALTER LIEW, USAPTI, and J.L. had been sued by DuPont in federal district court for misappropriation of trade secrets, CHRISTINA LIEW met with J.L. and discussed the pending litigation. During that meeting, CHRISTINA LIEW told J.L. not to reveal in connection with the civil litigation the identities of the former DuPont employees of whom J.L. was aware through his work with USAPTI.

All in violation of Title 18, United States Code, Section 1512(b)(1).

COUNT THIRTEEN:     (18 U.S.C. § 1512(k) – Conspiracy to Tamper with Evidence)

82. The factual allegations set forth in Paragraphs 1 through 15, 18 through 50, 77, 78, and 81 are re-alleged and incorporated as if fully set forth herein.

83. On or about July 19, 2011, agents of the Federal Bureau of Investigation (FBI) executed a search warrant at the residence of WALTER LIEW and CHRISTINA LIEW in Orinda, California, as part of a federal criminal investigation.

84. Between on or about April 6, 2011 and July 19, 2011, in the Northern District of California, and elsewhere, defendants

WALTER LIEW and
CHRISTINA LIEW

conspired to commit violations of 18 U.S.C. §§ 1512(b)(3) and (c)(1).

85. As part of the conspiracy, WALTER LIEW and CHRISTINA LIEW knowingly engaged in misleading conduct toward agents of the FBI with the intent to hinder, delay, and prevent the communication to those agents of information regarding the commission or possible commission of a federal offense, in violation of 18 U.S.C. § 1512(b)(3).

SUPERSEDING INDICTMENT
CR 11-0573 JSW (UNDER SEAL)                    21

1    86.   As further part of the conspiracy, WALTER LIEW and CHRISTINA LIEW

2    corruptly concealed records, documents, and other objects, and attempted to do so, with

3    the intent to impair the availability of the records, documents, and objects for use in an

4    official proceeding, in violation of 18 U.S.C. § 1512(c)(1).

5    87.   During the search of the LIEWs' residence conducted on July 19, 2011, FBI

6    agents found safe deposit box keys.   Speaking in Mandarin Chinese, WALTER LIEW

7    directed CHRISTINA LIEW to deny knowing anything about the keys.   CHRISTINA

8    LIEW followed his direction by stating to the agents in English that she did not remember

9    the safe deposit boxes when, in fact, she knew at the time that she had a safe deposit box,

10   to which one of the keys corresponded, at the Bank of East Asia in Oakland, California.

11   The safe deposit box contained information regarding USAPTI and USAPTI's

12   relationship with a Chinese customer that was purchasing TiO2 technology from

13   USAPTI, among other records, documents, and objects relevant to the FBI's

14   investigation.

15       All in violation of 18 U.S.C. § 1512(k).

16

17   COUNT FOURTEEN:      (18 U.S.C. §§ 1001(a)(2) & 2 – False Statements In a Matter
                              Within the Jurisdiction of the Executive Branch; Aiding and
18                            Abetting)

19   88.   The factual allegations set forth in Paragraphs 1 through 15, 18 through 50, 77,

20   78, 81, 83, and 85 through 87 are re-alleged and incorporated as if fully set forth herein.

21   89.   On or about July 19, 2011, in the Northern District of California, defendants

22                       WALTER LIEW and
                         CHRISTINA LIEW
23

24   knowingly and willfully made materially false, fictitious, and fraudulent statements and

25   representations regarding matters within the jurisdiction of the executive branch of the

26   Government of the United States, to wit, they denied knowledge of the bank safe deposit

27   box keys found in their home, when, in fact, they knew at the time they were asked by

28   FBI special agents that they had a safe deposit box to which one of the keys

SUPERSEDING INDICTMENT
CR 11-0573 JSW (UNDER SEAL)              22

1  corresponded.

2      All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

3

4  FIRST FORFEITURE ALLEGATION:   (18 U.S.C. §§ 1834 and 2323 – Proceeds and
                                    Property Involved in Economic Espionage)
5

6      90.   The allegations contained in Counts One, Three, and Four of this Superseding

7  Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging

   forfeiture pursuant to Title 18, United States Code, Sections 1834 and 2323.
8

9      91.   Upon conviction of the offenses in violation of Title 18, United States Code,

10 Section 1831 set forth in Counts One, Three, and Four of this Superseding Indictment,

   defendants
11

12                      WALTER LIEW,
                        CHRISTINA LIEW,
13                      USAPTI,
                        TZE CHAO,
14                      HOU SHENGDONG,
                        PANGANG GROUP,
15                      PGSVTC,
                        PANGANG GROUP TITANIUM, and
16                      PIETC

17 shall forfeit to the United States of America, pursuant to Title 18, United States Code,

18 Sections 1834 and 2323, any property used, or intended to be used, in any manner or part

19 to commit or facilitate the commission of the offenses; and any property constituting or

20 derived from any proceeds obtained directly or indirectly as a result of the commission of

21 the offenses.

22     92.   If any of the property described above, as a result of any act or omission

23 of the defendants:

24         a.   cannot be located upon the exercise of due diligence;

25         b.   has been transferred or sold to, or deposited with, a third party;

26         c.   has been placed beyond the jurisdiction of the court;

27         d.   has been substantially diminished in value; or

28         e.   has been commingled with other property which cannot be divided

SUPERSEDING INDICTMENT
CR 11-0573 JSW **(UNDER SEAL)**                    23

1     without difficulty,

2  the United States of America shall be entitled to forfeiture of substitute property pursuant

3  to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United

4  States Code, Section 2323(b).

5     All pursuant to Title 18, United States Code, Sections 1834 and 2323.

6

7  SECOND FORFEITURE          (18 U.S.C. §§ 1834 and 2323 – Proceeds and
   ALLEGATION:                Property Involved in Theft of Trade Secrets)
8

9  93.  The allegations contained in Counts Two and Five through Nine of this

10  Superseding Indictment are hereby re-alleged and incorporated by reference for the

11  purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 1834

12  and 2323.

13  94.  Upon conviction of the offenses in violation of Title 18, United States Code,

14  Section 1832 set forth in Counts Two and Five through Nine of this Superseding

15  Indictment, defendants

16                    WALTER LIEW,
                      CHRISTINA LIEW,
17                    ROBERT MAEGERLE,
                      USAPTI,
18                    HOU SHENGDONG,
                      PANGANG GROUP,
19                    PGSVTC,
                      PANGANG GROUP TITANIUM, and
20                    PIETC

21  shall forfeit to the United States of America, pursuant to Title 18, United States Code,

22  Sections 1834 and 2323, any property used, or intended to be used, in any manner or part

23  to commit or facilitate the commission of the offenses ; and any property constituting or

24  derived from any proceeds obtained directly or indirectly as a result of the commission of

25  the offenses.

26  95.  If any of the property described above, as a result of any act or omission

27  of the defendants:

28     a.  cannot be located upon the exercise of due diligence;

SUPERSEDING INDICTMENT
CR 11-0573 JSW (UNDER SEAL)          24

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b).

All pursuant to Title 18, United States Code, Sections 1834 and 2323.

THIRD FORFEITURE        (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461 –  Witness
ALLEGATION:              Tampering Proceeds)

96.   The allegations contained in Counts Ten through Thirteen of this Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

97.   Upon conviction of the offenses in violation of Title 18, United States Code, Section 1512 set forth in Counts Ten through Thirteen of this Superseding Indictment, defendants

WALTER LIEW,
CHRISTINA LIEW,
ROBERT MAEGERLE, and
USAPTI

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

98.   If any of the property described above, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

SUPERSEDING INDICTMENT
CR 11-0573 JSW (UNDER SEAL)                    25

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

DATED: _Feb 7, 2012_          A TRUE BILL


FOREPERSON


MELINDA HAAG
United States Attorney


MIRANDA KANE
Chief, Criminal Division

(Approved as to form:                                    )
                              AUSA Peter B. Axelrod
                              AUSA John H. Hemann

(2)

1  MELINDA HAAG (CABN 132612)
   United States Attorney

2

3

4

5

6

7

**FILED**

FEB - 7 2012

**RICHARD W. WIEKING**
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**REDACTED**

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,          )   No. CR 11-0573 JSW
12           Plaintiff,                )   VIOLATIONS: 18 U.S.C. § 1831(a)(5) –
                                       )   Conspiracy to Commit Economic
13      v.                             )   Espionage; 18 U.S.C. § 1832(a)(5) –
                                       )   Conspiracy to Commit Theft of Trade
14  WALTER LIAN-HEEN LIEW,             )   Secrets; 18 U.S.C. § 1831(a)(4) –
       a.k.a. LIU YUANXUAN,            )   Attempted Economic Espionage; 18
15  CHRISTINA HONG QIAO LIEW,          )   U.S.C. § 1832(a)(4) – Attempted Theft
       a.k.a. QIAO HONG,               )   of Trade Secrets; 18 U.S.C. § 1832(a)(3)
16  ROBERT J. MAEGERLE,                )   – Possession of Trade Secrets; 18 U.S.C.
    USA PERFORMANCE TECHNOLOGY,        )   § 1832(a)(2) – Conveying Trade Secrets;
17  INC.,                              )   18 U.S.C. § 2 – Aiding and Abetting; 18
    TZE CHAO,                          )   U.S.C. § 1512(k) – Conspiracy to
18     a.k.a. ZHI ZHAO,                )   Tamper with Witnesses and Evidence; 18
    HOU SHENGDONG,                     )   U.S.C. § 1512(b)(1) – Witness
19  PANGANG GROUP COMPANY, LTD.,       )   Tampering; 18 U.S.C. § 1001(a)(2)
    PANGANG GROUP STEEL                )   – False Statements; 18 U.S.C. § 2 –
20  VANADIUM & TITANIUM                )   Aiding and Abetting; 18 U.S.C. §§ 1834
    COMPANY, LTD.,                     )   and 2323 – Economic Espionage
21  PANGANG GROUP TITANIUM             )   Forfeiture; 18 U.S.C. §§ 1834 and 2323
    INDUSTRY COMPANY, LTD., and        )   – Trade Secret Forfeiture; 18 U.S.C. §
22  PANGANG GROUP INTERNATIONAL        )   981(a)(1)(C) & 28 U.S.C. § 2461 –
    ECONOMIC & TRADING COMPANY,        )   Witness Tampering Forfeiture
23                                     )
         Defendants.                   )   (SAN FRANCISCO VENUE)
24                                     )
                                       )   ~~(UNDER SEAL)~~
25  _____)

26

27

28

SUPERSEDING INDICTMENT
CR 11-0573 JSW ~~(UNDER SEAL)~~ Unsealed 2/8/2012

1  $\underline{S\ U\ P\ E\ R\ S\ E\ D\ I\ N\ G\ \ I\ N\ D\ I\ C\ T\ M\ E\ N\ T}$

2  The Grand Jury charges that at all times relevant to this Superseding Indictment:

3  $\underline{INTRODUCTORY\ ALLEGATIONS}$

4  1.   The government of the People's Republic of China (PRC) publicly identified the

5  development of chloride-route titanium dioxide (TiO2) production technology as a

6  scientific and economic priority.  Economic growth in the PRC had created significant

7  demand for TiO2, and because PRC companies had not been able to develop clean,

8  efficient TiO2 production technology, the PRC was a net importer of TiO2 from western

9  countries.  Chloride-route TiO2 production technology was closely held by western

10  companies, including E.I. du Pont de Nemours & Company (DuPont), which had invented

11  and improved the technology through intensive research and development over many

12  years.  DuPont was not willing to sell or license its proprietary technology to PRC

13  companies to build TiO2 factories in the PRC.

14  2.   Aware of the PRC's national priority and the barriers placed by DuPont on

15  access to the technology, at the times set forth below, individuals named in this

16  Superseding Indictment obtained TiO2 trade secrets belonging to DuPont and conveyed

17  information containing those trade secrets to companies controlled by the PRC

18  government without authorization from DuPont.

19  $\underline{Defendants\ in\ the\ United\ States}$

20  3.   Defendant WALTER LIAN-HEEN LIEW, also known as LIU YUANXUAN

21  (WALTER LIEW), was a resident of California, and an owner and executive of USA

22  PERFORMANCE TECHNOLOGY, INC. (USAPTI) and its predecessor companies, LH

23  Performance, Inc. and Performance Group (USA), Inc.  WALTER LIEW was born in

24  Malaysia in 1957, emigrated to the United States in 1984, and became a naturalized

25  citizen of the United States in 1993.

26  4.   Defendant CHRISTINA HONG QIAO LIEW, also known as QIAO HONG

27  (CHRISTINA LIEW), was a resident of California, and an owner and executive of

28  USAPTI and its predecessor companies, LH Performance, Inc. and Performance Group

SUPERSEDING INDICTMENT
CR 11-0573 JSW $\underline{(UNDER\ SEAL)}$                    2

1    (USA), Inc. CHRISTINA LIEW was born in the PRC in 1962, emigrated to the United

2    States in 1993, and became a naturalized citizen of the United States in 1997. WALTER

3    LIEW was married to CHRISTINA LIEW.

4         5.    Defendant USAPTI was a California corporation headquartered in Oakland,

5    California that offered engineering consulting services. USAPTI succeeded to the rights

6    and obligations of its predecessor companies, LH Performance, Inc. and Performance

7    Group (USA), Inc., with respect to those companies' TiO2 business, and the business

8    names were sometimes used interchangeably.

9         6.    Defendant TZE CHAO, also known as ZHI ZHAO, was a resident of Delaware

10   and an owner of two consulting firms: Cierra Technology, Inc. (Cierra), incorporated in

11   the State of Delaware, and Zhi Hua Technology Co., Ltd. (Zhi Hua), a Hong Kong-based

12   entity. CHAO was born in China in 1934, emigrated to the United States in 1967, and

13   became a naturalized citizen of the United States in December 1972. CHAO was a

14   DuPont employee from 1966 to 2002.

15        7.    Defendant ROBERT J. MAEGERLE was a resident of Delaware and an owner

16   of a consulting firm, Pinewater Designs, Inc. MAEGERLE was a process engineer,

17   among other things, for DuPont from 1956 to 1991.

18                              <u>Defendants in the PRC</u>

19        8.    The State-Owned Assets Supervision and Administration Commission of the

20   State Council (SASAC) was a special government agency of the PRC. It was under the

21   direct control of the State Council, the PRC's highest government authority. According

22   to its website, SASAC "performs investor's responsibilities, supervises and manages the

23   state-owned assets of the enterprises under the supervision of the Central Government . . .

24   and enhances the management of the state-owned assets." The appointment of senior

25   officers and directors of central state-owned assets was controlled by the Organization

26   Department of the Communist Party of China Central Committee and managed by

27   SASAC.

28   ///

9.   Defendant PANGANG GROUP COMPANY LIMITED (PANGANG GROUP), also known as Panzhihua Iron and Steel (Group) Co., Ltd., was a state-owned enterprise controlled by SASAC and located in Sichuan Province, PRC. The Chairman and certain other senior managers of PANGANG GROUP were officials of the Communist Party of China. In or about 2002, PANGANG GROUP acquired, through a joint venture, Jinzhou Titanium Industry Co., Ltd. (PANGANG Jinzhou), which operated a small TiO2 manufacturing facility in Liaoning Province, PRC.

10.   PANGANG GROUP controlled the following subsidiaries (referred to collectively in this Superseding Indictment as the "PANGANG GROUP companies"):

a.   Defendant PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY LIMITED (PGSVTC), which shared senior management with PANGANG GROUP.

b.   Defendant PANGANG GROUP TITANIUM INDUSTRY COMPANY LIMITED (PANGANG GROUP TITANIUM) was formed in 2007 by PANGANG GROUP to develop a large chloride-route TiO2 factory in Sichuan Province. PANGANG GROUP TITANIUM was owned and controlled by PANGANG GROUP and PGSVTC.

c.   Defendant PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY (PIETC) was the financing arm of PANGANG GROUP. It was responsible for securing the financing and handling the economic affairs of projects conducted by PANGANG GROUP. PIETC was owned and controlled by PANGANG GROUP and PGSVTC.

11.   Defendant HOU SHENGDONG was a citizen of the PRC and worked for the PANGANG GROUP and PANGANG GROUP TITANIUM where he served as Vice Director of the Chloride Process TiO2 Project Department.

DuPont Trade Secrets and Confidentiality Protections

12.   DuPont was a company headquartered in Wilmington, Delaware that manufactured TiO2, a commercially valuable white pigment that was used in a large number of materials ranging from paints to plastics to paper. DuPont manufactured TiO2

1   at plants in the United States, Mexico, and Taiwan using proprietary technology and sold

2   it throughout the world in interstate and foreign commerce, including in the PRC.

3   DuPont was the world's largest producer of TiO2 pigment, and its TiO2 accounted for

4   approximately one-fifth of all world-wide TiO2 sales.

5       13.  DuPont invented the chloride-route process for manufacturing TiO2 in the 1940s

6   and has refined this process over time.  The production of TiO2 through the chloride-

7   route is a complex manufacturing process, and DuPont has been continually working to

8   improve its process since its invention.  Through its seventy years of experience, research

9   and development, DuPont has developed a proprietary TiO2 process that provides DuPont

10  with a competitive advantage in the international marketplace.

11      14.  DuPont's TiO2 technology included, but was not limited to, the following trade

12  secrets:

13      a.    **Trade Secret 1**: The complete DuPont chloride-route process to

14  manufacture TiO2.  Trade Secret 1 includes, but is not limited to, Trade Secrets 2 through

15  5 set forth below.

16      b.    **Trade Secret 2**: DuPont Drawing No. W1245258, titled "Edge Moor Plant

17  Oxidation W/RPS System Drawing."  This drawing, marked with the DuPont oval logo

18  trademark, explicitly stated that the "information and know-how [on the drawing] may

19  not be used nor the drawing reproduced without the written permission of DuPont."  The

20  drawing provided information about TiO2 oxidation area process, including detailed

21  process flow descriptions for each major stream within the process, including stream

22  capacities, chemical compositions, temperatures, pressures, and physical states.  The

23  drawing included details related to pipeline sizes, automatic and manual valve sizes and

24  locations, detailed instrumentation requirements, and safety relief devices.

25      c.    **Trade Secret 3**: DuPont Accession Report No. 18135, titled "Improved

26  Mixing Correlation for the TiCl4 Oxidation Reaction Computer Model," dated September

27  7, 1994, which appended a mathematical equation, referred to as the "Diemer

28  correlation," and related code in the Fortran language for a computer model.  The

1    correlation, which enabled the calculation of the mixing time and distance required for the

2    completion of the oxidation process for any DuPont reactor under any set of process

3    conditions, incorporated historical operating data from DuPont's production lines and its

4    oxidation science. On its cover page, the report was marked "DuPont Confidential – use

5    and dispose per DISO [DuPont Information Security Organization] policy," and "[t]his

6    report contains confidential information and each holder is responsible for its

7    safekeeping. When no longer needed, please destroy or dispose of in conformance with

8    PIP [Proprietary Information Protection] Guidelines."

9        d.    **Trade Secret 4**: DuPont Flow Sheet No. EK2411, titled "Edge Moor

10   Pigments Plant Flow Sheet – Reaction Area," with handwritten notations. This flow

11   sheet, bearing the DuPont oval logo trademark, was marked "DuPont Confidential –

12   Special Control," and provided that the "employee receiving this registered print will sign

13   and print the attached acknowledging card, will properly safeguard this print and will be

14   held personally accountable for this print." The flow sheet contained information about

15   the TiO2 reaction area process, *e.g.*, the process of treating ores with chlorine gas,

16   including the inter-connectivity of all major streams between the reaction area equipment,

17   which illustrates where and how DuPont injects chemical additives, fuel, feedstocks,

18   purge gases and coolants to the process. This flow sheet also included roughly 30

19   alphanumeric handwritten references to a proprietary, internally-commissioned computer

20   simulation model on the ASPEN-PLUS® platform, known as the Reaction Aspen-Plus

21   (RAP) model, which was described in a separate confidential DuPont technical report.

22   The handwritten references matched the specific nomenclature used for the RAP model,

23   which was created for plant optimization projects and capacity expansions.

24       e.    **Trade Secret 5**: DuPont Document EM-C-8510-0148, titled "60,000

25   Metric Tons Per Year Scope/Basic Data," dated October 31, 1985, addressed to R.J.

26   MAEGERLE (the "Basic Data Document"). This 407-page document, which was

27   designated "Confidential – Special Control," and issued in numbered copies, provided the

28   scope and basic data for DuPont's then-planned chloride-route plant in Taiwan, which

later opened in Kuan Yin, Taiwan. It contained the process and equipment information necessary to design a greenfield (*e.g.*, a plant built from scratch at an undeveloped site), world-class production scale, integrated chloride-route TiO2 production line. The Basic Data Document's security statement provided that the report is "highly confidential" and "[m]uch of the report data are considered in the 'trade secret' category and should not be released to vendor representatives and non-Company personnel." The Basic Data document was itself a trade secret and it contained numerous discrete trade secrets within in it.

15. DuPont protected the confidential information surrounding its TiO2 technology, including its trade secrets, to prevent unauthorized use or disclosure, by a variety of measures, including, but not limited to:

- limiting visitor access to its TiO2 facilities;
- transmitting, receiving, and destroying confidential information in a secure manner;
- requiring employees to execute non-disclosure agreements;
- requiring separating employees to certify that they had returned all confidential or secret DuPont materials;
- compartmentalizing information surrounding the TiO2 process and access to it;
- requiring permission to access data systems that contain TiO2 documentation - including drawings, equipment specifications, instrument specifications, logic diagrams, standard operation procedures, maintenance work practices, technology reports, etc.;
- sending letters to former DuPont employees and/or competing companies that hired former DuPont employees regarding the protection of its trade secrets; and
- maintaining physical security measures in and around TiO2 production facilities, including fences, gates, locks, guard facilities, surveillance, escort

1    requirements, identification badges, and prohibitions on photography and

2    videotaping.

3

4    COUNT ONE:    (18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage)

5       16.   The allegations contained in Paragraphs 1 through 15 are re-alleged and

6    incorporated as if fully set forth herein.

7       17.   Beginning in or about 1998, and continuing to in or about October 2011, in the

8    Northern District of California and elsewhere, defendants

9                          WALTER LIEW,
                           CHRISTINA LIEW,
10                         USAPTI,
                           TZE CHAO,
11                         HOU SHENGDONG,
                           PANGANG GROUP,
12                         PGSVTC,
                           PANGANG GROUP TITANIUM, and
13                         PIETC,

14   together with others known and unknown to the Grand Jury, knowingly combined,

15   conspired and agreed to:

16       a.    knowingly and without authorization copy, duplicate, sketch, draw, alter,

17   photocopy, replicate, transmit, deliver, send, communicate, and convey trade secrets

18   belonging to DuPont; and

19       b.    knowingly receive, buy and possess trade secrets belonging to DuPont,

20   knowing the same to have been stolen, appropriated, obtained and converted without

21   authorization;

22   intending and knowing that the offenses would benefit a foreign government, namely the

23   PRC, and foreign instrumentalities, namely PANGANG GROUP, PGSVTC, PANGANG

24   GROUP TITANIUM, and PIETC, in violation of Title 18, United States Code, Sections

25   1831(a)(2) and (a)(3).

26                          Manner and Means of the Conspiracy

27       18.   In order to develop chloride-route TiO2 production capabilities and circumvent

28   DuPont's restriction on its proprietary technology, companies owned and controlled by

1 the PRC government and employees of those companies, including the PANGANG

2 GROUP companies named in this Superseding Indictment, attempted to illegally obtain

3 technology that had been developed by DuPont.

4   19. In the 1990s, WALTER LIEW learned that the government of the PRC had

5 prioritized the development of chloride-route TiO2 technology. By the beginning of

6 1998, WALTER LIEW had assembled a team of former DuPont employees, including

7 MAEGERLE and others, to assist him in his efforts to convey DuPont's TiO2 technology

8 to entities in the PRC.

9   20. WALTER LIEW executed contracts with state-owned entities in the PRC for

10 chloride-route TiO2 projects that relied on the transfer of illegally obtained DuPont

11 technology, including: (a) a $5,600,000 contract in 1998 with the import and export

12 company of Chengde Iron & Steel Group; (b) a $6,180,000 contract in 2005 with

13 PANGANG Jinzhou for a 30,000 metric tons per year (MTPY) project; and (c) a

14 $17,800,000 contract in 2009 with PIETC and PANGANG GROUP TITANIUM for a

15 100,000 MTPY project.

16   21. MAEGERLE had detailed knowledge of DuPont's TiO2 technology and

17 expertise in building TiO2 production lines. In furtherance of the contracts entered into

18 by WALTER LIEW, MAEGERLE provided WALTER LIEW and USAPTI with DuPont

19 information, including information contained in Trade Secret 5.

20                                    PANGANG GROUP Projects

21   22. In approximately 2003, PANGANG Jinzhou, a subsidiary of PANGANG

22 GROUP, decided to build a larger, more efficient 30,000 MTPY chloride-process plant.

23 WALTER LIEW wrote letters in 2003 and 2004, claiming to possess the complete TiO2

24 process technology and attempting to sell his services to PANGANG Jinzhou to design its

25 new factory.

26   23. In March 2004, PANGANG GROUP hired CHAO as a consultant because of his

27 experience with and knowledge of DuPont's TiO2 technology. At PANGANG GROUP's

28 instruction, CHAO contacted WALTER LIEW and asked LIEW about his chloride-route

SUPERSEDING INDICTMENT
CR 11-0573 JSW (UNDER SEAL)                        9

1  TiO2 technology.

2      24.  As part of the negotiation process for the PANGANG Jinzhou contract,

3  WALTER LIEW also provided PANGANG Jinzhou with numerous photographs of

4  DuPont facilities, which revealed proprietary and confidential aspects of the

5  manufacturing process.  WALTER LIEW obtained these photographs from MAEGERLE

6  who was not authorized to take or disseminate them outside DuPont.

7      25.  In or about 2008, PANGANG GROUP put out a request for proposal for a

8  100,000 MTPY chloride-route TiO2 project in Chongqing, PRC.  Both USAPTI and

9  Cierra (CHAO's company) submitted bids. No other engineering firm bid on the project.

10 In their efforts to obtain the contract, both USAPTI and Cierra represented to PANGANG

11 GROUP that they possessed DuPont technology.

12     26.  Throughout 2008, WALTER LIEW and MAEGERLE for USAPTI and CHAO

13 for Cierra provided detailed information to PANGANG GROUP regarding the design and

14 construction of the new facility.  During these technology exchanges, PANGANG

15 GROUP employees, including HOU SHENGDONG and an official from PANGANG

16 GROUP TITANIUM, asked WALTER LIEW and CHAO for DuPont blueprints and the

17 names of former DuPont employees who would work on the project.

18     27.  In 2009, PANGANG GROUP hired USAPTI to design the project in Chongqing.

19 The parties to the contract were USAPTI, PANGANG GROUP, and PIETC, and the

20 beneficiary of the contract was PANGANG GROUP's subsidiary, PANGANG GROUP

21 TITANIUM.

22     28.  Following the execution of the contract for the 100,000 MTPY project, USAPTI,

23 PANGANG GROUP TITANIUM, and PIETC had a series of meetings in San Francisco

24 and the PRC to advance the project.  At various times, WALTER LIEW, CHRISTINA

25 LIEW, MAEGERLE, and others attended meetings on behalf of USAPTI, and HOU

26 SHENGDONG and others attended meetings on behalf of PANGANG GROUP

27 TITANIUM.

28 ///

29. The basic design information USAPTI delivered to PANGANG GROUP TITANIUM in August 2009 contained numerous features based on technology directly misappropriated from DuPont. At the request of an official from PANGANG GROUP TITANIUM, CHAO reviewed USAPTI's designs in China in September 2009. CHAO prepared a report for PANGANG GROUP TITANIUM with specific suggestions for improving USAPTI's designs. CHAO's suggestions relied, in part, on DuPont's trade secrets, which he included in his report.

30. Between July 6, 2009 and July 6, 2011, PIETC paid USAPTI (and its predecessor, Performance Group) $12,578,461 for work on the 100,000 MTPY project.

31. Proceeds from the sale of DuPont technology to PANGANG GROUP were paid to WALTER LIEW, CHRISTINA LIEW, and USAPTI through letters of credit and letters of guarantee established at various Chinese banks. To obtain this money, WALTER LIEW, CHRISTINA LIEW, and USAPTI drew down on the letters of credit and letters of guarantee through Mega International Commercial Bank in San Jose, California. WALTER LIEW and CHRISTINA LIEW wired millions of dollars in proceeds from PANGANG GROUP to CHRISTINA LIEW's relatives in the PRC through bank accounts in Singapore and elsewhere.

## Overt Acts

32. In furtherance of the conspiracy and to effect its objects, defendants committed the following overt acts, among others, in the Northern District of California and elsewhere:

33. On or about March 15, 1998, MAEGERLE sent a facsimile to WALTER LIEW that contained proprietary and confidential information about DuPont's TiO2 plant costs and personnel data, including information from Trade Secret 5.

34. On or about October 8, 2005, MAEGERLE emailed WALTER LIEW a series of photographs from various DuPont facilities that contained proprietary and confidential information about DuPont technologies associated with its chloride-route TiO2 process.

///

SUPERSEDING INDICTMENT
CR 11-0573 JSW (UNDER SEAL)                    11

35. On or about November 25, 2005, WALTER LIEW on behalf of Performance Group (USA), Inc. entered into a $6,180,000 contract on the 30,000 MTPY chloride-route TiO2 project with PIETC on behalf of PANGANG Jinzhou.

36. On or about April 17, 2008, WALTER LIEW directed Mega Bank to wire $759,982 to an account at the Development Bank of Singapore (DBS) in the name of Huadong Equipment Solutions, Pte, Ltd. (Huadong), over which WALTER LIEW had signature authority.

37. On or about May 29, 2008, WALTER LIEW directed DBS to wire $750,000 from the Huadong account in Singapore to an HSBC in account in Hong Kong belonging to CHRISTINA LIEW's father, a resident of the PRC, over which WALTER LIEW had signature authority.

38. On or about May 30, 2008, WALTER LIEW directed the transfer of approximately $670,000 from the HSBC account of CHRISTINA LIEW's father into a deposit account.

39. On or about June 2, 2008, employees of PANGANG GROUP companies, including HOU SHENGDONG, agreed that PANGANG GROUP would work with Cierra and CHAO if they employed former DuPont employees and possessed blueprints for DuPont's TiO2 plants.

40. On or about July 15, 2008, WALTER LIEW and CHRISTINA LIEW informed PANGANG GROUP TITANIUM that their drawings would replicate DuPont's DeLisle plant.

41. On or about August 22, 2008, MAEGERLE provided a USAPTI consultant with electronic copies of confidential, proprietary DuPont documents during a business trip to the PRC, including Trade Secret 2, Trade Secret 4, and a set of the photographs described in Paragraph 34.

42. On or about October 25, 2008, MAEGERLE emailed WALTER LIEW specific information from Trade Secret 5 and stated that "[t]he Jinzhou specifications were scaled down" from information from Trade Secret 5.

1     43.  In or about July 2009, MAEGERLE drafted a three-page document entitled,
2  "100K T/Y TiO2 CHLORINATOR DESIGN," which referenced specific confidential,
3  proprietary data contained in the Basic Data Document (Trade Secret 5), which he used to
4  scale up for the 100,000 MTPY project.
5     44.  On or about September 3, 2009, MAEGERLE sent WALTER LIEW an email
6  containing a specific and confidential figure from Trade Secret 5.
7     45.  On August 8, 2010, USAPTI executed a $796,000 contract with PIETC for
8  PANGANG GROUP Chongqing Titanium Industry Co., Ltd. to procure equipment for
9  the 100,000 MTPY project.
10    46.  In or about November 2010, WALTER LIEW provided a portion of Trade Secret
11  3 to a USAPTI employee.
12    47.  A USAPTI employee emailed himself portions of Trade Secret 3 on February 22,
13  2011, March 4, 2011, and March 8, 2011.
14    48.  On or about July 19, 2011, WALTER LIEW and CHRISTINA LIEW concealed
15  Trade Secret 2 and Trade Secret 4 at their residence in Orinda, California.
16    49.  On or about July 19, 2011, CHRISTINA LIEW attempted to prevent law
17  enforcement from gaining access to a safe deposit box at Bank of East Asia in Oakland,
18  California that contained copies of Trade Secret 2 and 4 and the photographs referenced
19  in Paragraph 34.
20    50.  In or about October 2011, HOU SHENGDONG attempted to contact CHAO for
21  additional assistance with the 100,000 MTPY project.
22         All in violation of Title 18, United States Code, Section 1831(a)(5).
23
24  COUNT TWO:       (18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade
25                            Secrets)
26    51.  The allegations contained in Paragraphs 1 through 15 are re-alleged and
27  incorporated as if fully set forth herein.
28  ///

SUPERSEDING INDICTMENT
CR 11-0573 JSW (UNDER SEAL)          13

52. Beginning in or about 1998, and continuing to in or about October 2011, in the Northern District of California and elsewhere, defendants

WALTER LIEW,
CHRISTINA LIEW,
ROBERT MAEGERLE,
USAPTI,
HOU SHENGDONG,
PANGANG GROUP,
PGSVTC,
PANGANG GROUP TITANIUM, and
PIETC,

together with others known and unknown to the Grand Jury, knowingly combined, conspired and agreed to:

a. knowingly and without authorization copy, duplicate, sketch, draw, alter, photocopy, replicate, transmit, deliver, send, communicate, and convey trade secrets belonging to DuPont; and

b. knowingly receive, buy and possess trade secrets belonging to DuPont, knowing the same to have been stolen, appropriated, obtained and converted without authorization;

intending to convert a trade secret that is related to and included in a product, namely TiO2, that is produced for and placed in interstate and foreign commerce, to the economic benefit of someone other than DuPont, and intending and knowing that the offense would injure DuPont, in violation of Title 18, United States Code, Sections 1832(a)(2) and (a)(3).

### Manner and Means of the Conspiracy

53. The objects of the conspiracy were carried out, in part, as alleged in Paragraphs 18 through 31 above.

### Overt Acts

54. In furtherance of the conspiracy and to effect its objects, defendants committed the overt acts alleged in Paragraphs 32 through 50, among others, in the Northern District of California and elsewhere.

All in violation of Title 18, United States Code, Section 1832(a)(5).

SUPERSEDING INDICTMENT
CR 11-0573 JSW (UNDER SEAL)                14

1   <u>COUNT THREE</u>:   (18 U.S.C. § 1831(a)(2) and (4) – Attempted Economic Espionage)

2     55.   The allegations contained in Paragraphs 1 through 15 and 18 through 50 are re-

3   alleged and incorporated as if fully set forth herein.

4     56.   Beginning on a date unknown, but no later than 2008, and continuing to on or

5   about July 19, 2011, in the Northern District of California and elsewhere, defendants

6                          WALTER LIEW,

                            CHRISTINA LIEW, and

7                          USAPTI

8   knowingly and without authorization attempted to copy, duplicate, sketch, draw, alter,

9   photocopy, replicate, transmit, deliver, send, communicate, and convey a trade secret

10   belonging to DuPont, specifically Trade Secret 1, intending and knowing that the offenses

11   would benefit a foreign government, namely the PRC, and foreign instrumentalities,

12   namely PANGANG GROUP, PGSVTC, PANGANG GROUP TITANIUM, and PIETC,

13   in violation of Title 18, United States Code, Sections 1831(a)(2).

14     All in violation of Title 18, United States Code, Section 1831(a)(4).

15

16   <u>COUNT FOUR</u>:   (18 U.S.C. § 1831(a)(3) and (4) – Attempted Economic Espionage)

17     57.   The allegations contained in Paragraphs 1 through 15 and 18 through 50 are re-

18   alleged and incorporated as if fully set forth herein.

19     58.   Beginning on a date unknown, but no later than 2008, and continuing to on or

20   about October 2011, in the Northern District of California and elsewhere, defendants

21                          HOU SHENGDONG,

                           PANGANG GROUP,

22                          PGSVTC,

                           PANGANG GROUP TITANIUM, and

23                          PIETC

24   knowingly attempted to receive, buy, and possess a trade secret belonging to DuPont,

25   specifically, Trade Secret 1, knowing it to have been stolen, appropriated, obtained, and

26   converted without authorization, intending and knowing that the offense would benefit a

27   foreign government, namely the PRC, and foreign instrumentalities, namely PANGANG

28   GROUP, PGSVTC, PANGANG GROUP TITANIUM, and PIETC, in violation of Title

1 | 18, United States Code, Sections 1831(a)(3).

2 |     All in violation of Title 18, United States Code, Section 1831(a)(4).

3 | COUNT FIVE:    (18 U.S.C. § 1832(a)(2) and (4) – Attempted Theft of Trade Secrets)

4 |     59.   The allegations contained in Paragraphs 1 through 15 and 18 through 50 are re-

5 | alleged and incorporated as if fully set forth herein.

6 |     60.   Beginning on a date unknown, but no later than 2008, and continuing to on or

7 | about July 19, 2011, in the Northern District of California and elsewhere, defendants

8 |                     WALTER LIEW,
                    CHRISTINA LIEW,

9 |                     ROBERT MAEGERLE, and
                    USAPTI

10 |

11 | knowingly and without authorization attempted to copy, duplicate, sketch, draw, alter,

12 | photocopy, replicate, transmit, deliver, send, communicate, and convey a trade secret

13 | belonging to DuPont, specifically Trade Secret 1, with the intent to convert the trade

14 | secret, which was related to and included in a product, specifically TiO2, that was

15 | produced for and placed in interstate and foreign commerce, to the economic benefit of

16 | someone other than DuPont, and intending and knowing that the offense would injure

17 | DuPont, in violation of Title 18, United States Code, Sections 1832(a)(2).

18 |     All in violation of Title 18, United States Code, Section 1832(a)(4).

19 |

20 | COUNT SIX:    (18 U.S.C. § 1832(a)(3) – Possession of Trade Secrets)

21 |     61.   The allegations contained in Paragraphs 1 through 15, 48, and 49 are re-alleged

22 | and incorporated as if fully set forth herein.

23 |     62.   On or about July 19, 2011, in the Northern District of California and elsewhere,

24 | defendants

25 |

26 |                     WALTER LIEW,
                    CHRISTINA LIEW, and
                    USAPTI

27 |

28 | knowingly possessed a trade secret, specifically Trade Secret 2, knowing it to have been

1   stolen and appropriated, obtained, and converted without authorization, with the intent to

2   convert the trade secret, which was related to and included in a product, specifically

3   TiO2, that is produced for and placed in interstate and foreign commerce, to the economic

4   benefit of someone other than DuPont, and intending and knowing that the offense would

5   injure DuPont.

6          All in violation of Title 18, United States Code, Sections 1832(a)(3).

7

8   <u>COUNT SEVEN</u>:    (18 U.S.C. § 1832(a)(3) – Possession of Trade Secrets)

9          63.   The allegations contained in Paragraphs 1 through 15, 46, and 47 are re-alleged

10  and incorporated as if fully set forth herein.

11         64.   In or about 2010, in the Northern District of California and elsewhere,

12  defendants

13                              WALTER LIEW and
                                USAPTI
14

15  knowingly received and possessed a trade secret, specifically Trade Secret 3, knowing it

16  to have been stolen and appropriated, obtained, and converted without authorization, with

17  the intent to convert the trade secret, which was related to and included in a product,

18  specifically TiO2, that is produced for and placed in interstate and foreign commerce, to

19  the economic benefit of someone other than DuPont, and intending and knowing that the

20  offense would injure DuPont.

21         All in violation of Title 18, United States Code, Sections 1832(a)(3).

22
    <u>COUNT EIGHT</u>:    (18 U.S.C. §§ 1832(a)(2) and 2 – Conveying Trade Secrets; Aiding
23                         and Abetting)

24         65.   The allegations contained in Paragraphs 1 through 15, 21, and 42 through 44 are

25  re-alleged and incorporated as if fully set forth herein.

26  ///

27  ///

28  ///

SUPERSEDING INDICTMENT
CR 11-0573 JSW <u>(UNDER SEAL)</u>                    17

1    66.  Between in or about 1998 to July 2011, in the Northern District of California and

2  elsewhere, defendants

3                            WALTER LIEW,
                            ROBERT MAEGERLE, and
4                            USAPTI

5  knowingly and without authorization copied, duplicated, sketched, drew, altered,

6  photocopied, replicated, transmitted, delivered, sent, communicated, and conveyed a trade

7  secret belonging to DuPont, specifically Trade Secret 5, with the intent to convert the

8  trade secret, which was related to and included in a product, specifically TiO2, that was

9  produced for and placed in interstate and foreign commerce, to the economic benefit of

10  someone other than DuPont, and intending and knowing that the offense would injure

11  DuPont, and did aid and abet such conduct.

12        All in violation of Title 18, United States Code, Sections 1832(a)(3) and 2.

13

14  COUNT NINE:     (18 U.S.C. § 1832(a)(3) – Possession of Trade Secrets)

15    67.  The allegations contained in Paragraphs 1 through 15, 48, and 49 are re-alleged

16  and incorporated as if fully set forth herein.

17    68.  On or about July 19, 2011, in the Northern District of California and elsewhere,

18  defendants

19                            WALTER LIEW,
                            CHRISTINA LIEW, and
20                            USAPTI

21  knowingly possessed a trade secret, specifically Trade Secret 4, knowing it to have been

22  stolen and appropriated, obtained, and converted without authorization, with the intent to

23  convert the trade secret, which was related to and included in a product, specifically

24  TiO2, that was produced for and placed in interstate and foreign commerce, to the

25  economic benefit of someone other than DuPont, and intending and knowing that the

26  offense would injure DuPont.

27        All in violation of Title 18, United States Code, Sections 1832(a)(3).

28  ///

SUPERSEDING INDICTMENT
CR 11-0573 JSW (UNDER SEAL)              18

COUNT TEN:    (18 U.S.C. § 1512(k) – Conspiracy to Tamper with Witnesses
              and Evidence)

69.  The factual allegations set forth in Paragraphs 1 through 15 and 18 through 50 are re-alleged and incorporated as if fully set forth herein.

70.  On or about April 6, 2011, DuPont filed a civil complaint in United States District Court in San Francisco. The complaint alleged that USAPTI, WALTER LIEW, and J.L., a USAPTI employee (the "civil defendants"), misappropriated trade secrets from DuPont. The federal civil complaint alleged that the civil defendants "wrongfully obtained and possess confidential, proprietary, trade secret materials providing detailed specifications for DuPont's Chloride-route titanium dioxide ('TiO2') pigment manufacturing process."

71.  On or about and between April 6, 2011, and May 11, 2011, in the Northern District of California and elsewhere, defendants

> WALTER LIEW,
> ROBERT MAEGERLE, and
> USAPTI

knowingly conspired to commit violations of 18 U.S.C. § 1512(c).

72.  As part of the conspiracy, WALTER LIEW, MAEGERLE, and USAPTI corruptly obstructed, influenced, and impeded an official proceeding, in violation of 18 U.S.C. § 1512(c)(2).

73.  Specifically, after DuPont filed the federal civil complaint, MAEGERLE emailed WALTER LIEW for the purpose of assisting WALTER LIEW in responding to the lawsuit and knowing that WALTER LIEW would use the information for that purpose. MAEGERLE emailed materially false information about the source of the information used for USAPTI's projects in the PRC and specifically stated that no information from DuPont's Kuan Yin plant was used in the USAPTI designs, which was false and known to be false to both MAEGERLE and LIEW. MAEGERLE provided LIEW with comments on specific paragraphs of the complaint.

///

74. LIEW caused an answer to be filed to the federal civil complaint on or about May 11, 2011, which contained false statements, including the answer to paragraph 32 of the complaint that "Defendants have never misappropriated any information from DuPont or any of its locations, whether the Kuan Yin facility or otherwise."

All in violation of Title 18, United States Code, Section 1512(k).

COUNT ELEVEN:          (18 U.S.C. § 1512(b)(1) – Witness Tampering)

75. The factual allegations set forth in Paragraphs 1 through 15, 18 through 50, and 70 are re-alleged and incorporated as if fully set forth herein.

76. In or about April 2011, in the Northern District of California, defendant

WALTER LIEW

did knowingly intimidate, threaten, and corruptly persuade, and attempt to intimidate, threaten, and corruptly persuade, another person, specifically J.L., with the intent to influence, delay, and prevent the testimony of J.L. in an official proceeding.

77. WALTER LIEW, CHRISTINA LIEW, and USAPTI employed and paid at least two former DuPont employees for assistance in designing TiO2 manufacturing facilities for two or more customers in China. These employees were known to J.L. when he worked for USAPTI.

78. Specifically, after learning that he, USAPTI, and J.L. had been sued by DuPont in federal district court for misappropriation of trade secrets, WALTER LIEW met with J.L. and told J.L. that he should not say anything about other individuals who had worked with USAPTI – meaning the former DuPont employees – because it would not be good for J.L. or J.L.'s family.

All in violation of Title 18, United States Code, Section 1512(b)(1).

COUNT TWELVE:          (18 U.S.C. § 1512(b)(1) – Witness Tampering)

79. The factual allegations set forth in Paragraphs 1 through 15, 18 through 50, 77, and 78 are re-alleged and incorporated as if fully set forth herein.

1    80.   In or about April 2011, in the Northern District of California, defendant

2                   CHRISTINA LIEW

3    did knowingly intimidate, threaten, and corruptly persuade, and attempt to intimidate,

4    threaten, and corruptly persuade, another person, specifically J.L., with the intent to

5    influence, delay, and prevent the testimony of J.L. in an official proceeding.

6    81.   Specifically, after learning that WALTER LIEW, USAPTI, and J.L. had been

7    sued by DuPont in federal district court for misappropriation of trade secrets,

8    CHRISTINA LIEW met with J.L. and discussed the pending litigation. During that

9    meeting, CHRISTINA LIEW told J.L. not to reveal in connection with the civil litigation

10    the identities of the former DuPont employees of whom J.L. was aware through his work

11    with USAPTI.

12    All in violation of Title 18, United States Code, Section 1512(b)(1).

13

14    <u>COUNT THIRTEEN:</u>    (18 U.S.C. § 1512(k) – Conspiracy to Tamper with Evidence)

15    82.   The factual allegations set forth in Paragraphs 1 through 15, 18 through 50, 77,

16    78, and 81 are re-alleged and incorporated as if fully set forth herein.

17    83.   On or about July 19, 2011, agents of the Federal Bureau of Investigation (FBI)

18    executed a search warrant at the residence of WALTER LIEW and CHRISTINA LIEW

19    in Orinda, California, as part of a federal criminal investigation.

20    84.   Between on or about April 6, 2011 and July 19, 2011, in the Northern District of

21    California, and elsewhere, defendants

22                   WALTER LIEW and
                      CHRISTINA LIEW

23

24    conspired to commit violations of 18 U.S.C. §§ 1512(b)(3) and (c)(1).

25    85.   As part of the conspiracy, WALTER LIEW and CHRISTINA LIEW knowingly

26    engaged in misleading conduct toward agents of the FBI with the intent to hinder, delay,

27    and prevent the communication to those agents of information regarding the commission

28    or possible commission of a federal offense, in violation of 18 U.S.C. § 1512(b)(3).

86. As further part of the conspiracy, WALTER LIEW and CHRISTINA LIEW corruptly concealed records, documents, and other objects, and attempted to do so, with the intent to impair the availability of the records, documents, and objects for use in an official proceeding, in violation of 18 U.S.C. § 1512(c)(1).

87. During the search of the LIEWs' residence conducted on July 19, 2011, FBI agents found safe deposit box keys. Speaking in Mandarin Chinese, WALTER LIEW directed CHRISTINA LIEW to deny knowing anything about the keys. CHRISTINA LIEW followed his direction by stating to the agents in English that she did not remember the safe deposit boxes when, in fact, she knew at the time that she had a safe deposit box, to which one of the keys corresponded, at the Bank of East Asia in Oakland, California. The safe deposit box contained information regarding USAPTI and USAPTI's relationship with a Chinese customer that was purchasing TiO2 technology from USAPTI, among other records, documents, and objects relevant to the FBI's investigation.

All in violation of 18 U.S.C. § 1512(k).

COUNT FOURTEEN:   (18 U.S.C. §§ 1001(a)(2) & 2 – False Statements In a Matter Within the Jurisdiction of the Executive Branch; Aiding and Abetting)

88. The factual allegations set forth in Paragraphs 1 through 15, 18 through 50, 77, 78, 81, 83, and 85 through 87 are re-alleged and incorporated as if fully set forth herein.

89. On or about July 19, 2011, in the Northern District of California, defendants

WALTER LIEW and
CHRISTINA LIEW

knowingly and willfully made materially false, fictitious, and fraudulent statements and representations regarding matters within the jurisdiction of the executive branch of the Government of the United States, to wit, they denied knowledge of the bank safe deposit box keys found in their home, when, in fact, they knew at the time they were asked by FBI special agents that they had a safe deposit box to which one of the keys

1  corresponded.

2       All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

3

4  FIRST FORFEITURE ALLEGATION:  (18 U.S.C. §§ 1834 and 2323 – Proceeds and
                                  Property Involved in Economic Espionage)
5

6       90.  The allegations contained in Counts One, Three, and Four of this Superseding

7  Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging

   forfeiture pursuant to Title 18, United States Code, Sections 1834 and 2323.
8

9       91.  Upon conviction of the offenses in violation of Title 18, United States Code,

10  Section 1831 set forth in Counts One, Three, and Four of this Superseding Indictment,

    defendants
11
                              WALTER LIEW,
12                            CHRISTINA LIEW,
                              USAPTI,
13                            TZE CHAO,
                              HOU SHENGDONG,
14                            PANGANG GROUP,
                              PGSVTC,
15                            PANGANG GROUP TITANIUM, and
                              PIETC
16

17  shall forfeit to the United States of America, pursuant to Title 18, United States Code,

18  Sections 1834 and 2323, any property used, or intended to be used, in any manner or part

19  to commit or facilitate the commission of the offenses; and any property constituting or

20  derived from any proceeds obtained directly or indirectly as a result of the commission of

21  the offenses.

22       92.  If any of the property described above, as a result of any act or omission

23  of the defendants:

24       a.   cannot be located upon the exercise of due diligence;

25       b.   has been transferred or sold to, or deposited with, a third party;

26       c.   has been placed beyond the jurisdiction of the court;

27       d.   has been substantially diminished in value; or

28       e.   has been commingled with other property which cannot be divided

1         without difficulty,

2 the United States of America shall be entitled to forfeiture of substitute property pursuant

3 to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United

4 States Code, Section 2323(b).

5         All pursuant to Title 18, United States Code, Sections 1834 and 2323.

6

7 SECOND FORFEITURE       (18 U.S.C. §§ 1834 and 2323 – Proceeds and
   ALLEGATION:            Property Involved in Theft of Trade Secrets)

8

9    93.   The allegations contained in Counts Two and Five through Nine of this

10 Superseding Indictment are hereby re-alleged and incorporated by reference for the

11 purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 1834

12 and 2323.

13    94.   Upon conviction of the offenses in violation of Title 18, United States Code,

14 Section 1832 set forth in Counts Two and Five through Nine of this Superseding

15 Indictment, defendants

16                   WALTER LIEW,
                       CHRISTINA LIEW,

17                   ROBERT MAEGERLE,
                       USAPTI,

18                   HOU SHENGDONG,
                       PANGANG GROUP,

19                   PGSVTC,
                       PANGANG GROUP TITANIUM, and

20                   PIETC

21 shall forfeit to the United States of America, pursuant to Title 18, United States Code,

22 Sections 1834 and 2323, any property used, or intended to be used, in any manner or part

23 to commit or facilitate the commission of the offenses ; and any property constituting or

24 derived from any proceeds obtained directly or indirectly as a result of the commission of

25 the offenses.

26    95.   If any of the property described above, as a result of any act or omission

27 of the defendants:

28       a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b).

All pursuant to Title 18, United States Code, Sections 1834 and 2323.

THIRD FORFEITURE    (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461 –  Witness
ALLEGATION:    Tampering Proceeds)

96.   The allegations contained in Counts Ten through Thirteen of this Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

97.   Upon conviction of the offenses in violation of Title 18, United States Code, Section 1512 set forth in Counts Ten through Thirteen of this Superseding Indictment, defendants

WALTER LIEW,
CHRISTINA LIEW,
ROBERT MAEGERLE, and
USAPTI

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

98.   If any of the property described above, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

1   b. has been transferred or sold to, or deposited with, a third party;

2   c. has been placed beyond the jurisdiction of the court;

3   d. has been substantially diminished in value; or

4   e. has been commingled with other property which cannot be divided
     without difficulty,

5

6 the United States of America shall be entitled to forfeiture of substitute property pursuant

7 to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States

8 Code, Section 2461(c).

9   All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28,

10 United States Code, Section 2461(c).

11

12 DATED: _Feb 7, 2012_   A TRUE BILL

13

14

15           FOREPERSON

16

17 MELINDA HAAG
  United States Attorney

18

19

20 MIRANDA KANE
  Chief, Criminal Division

21

22 (Approved as to form:

23     AUSA Peter B. Axelrod
      AUSA John H. Hemann

24

25

26

27

28

SUPERSEDING INDICTMENT
CR 11-0573 JSW **(UNDER SEAL)**    26



AO 466A (Rev. 12/09)  Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
### for the
### District of Delaware

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.  12-22M |
| | ) | |
| ROBERT J. MAEGERLE | ) | Charging District's Case No.   USDC/NDCA CR11-573 |
| *Defendant* | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)* _____

I have been informed of the charges and of my rights to:

(1)    retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)    an identity hearing to determine whether I am the person named in the charges;

(3)    production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)    a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise — unless I am indicted — to determine whether there is probable cause to believe that an offense has been committed;

(5)    a hearing on any motion by the government for detention;

(6)    request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☐    an identity hearing and production of the warrant.

☐    a preliminary hearing.

☐    a detention hearing.

☑    an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district.  I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:    02/08/2012                    _____
                                              *Defendant's signature*

                                              _____
                                              *Signature of defendant's attorney*

                                              _____
                                              *Printed name of defendant's attorney*



AO 467 (Rev. 01/09) Order Requiring a Defendant to Appear in the District Where Charges are Pending and Transferring Bail

# UNITED STATES DISTRICT COURT
for the
District of Delaware

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 12-2M |
| | ) | |
| ROBERT J. MAEGERLE | ) | Charging District:     Northern District of California |
| *Defendant* | ) | Charging District's Case No.  CR 11-573 JSW |

## ORDER REQUIRING A DEFENDANT TO APPEAR IN THE DISTRICT
## WHERE CHARGES ARE PENDING AND TRANSFERRING BAIL

        After a hearing in this court, the defendant is released from custody and ordered to appear in the district court where the charges are pending to answer those charges.  If the time to appear in that court has not yet been set, the defendant must appear when notified to do so.  Otherwise, the time and place to appear in that court are:

| | |
|---|---|
| Place: Phillip Burton United States Courthouse<br>        450 Golden Gate Avenue, 16th Floor<br>        San Francisco, CA  94102-3434 | Courtroom No.:  Judge Elizabeth D. Laporte |
| | Date and Time: 3/1/2012 9:30 am |

        The clerk is ordered to transfer any bail deposited in the registry of this court to the clerk of the court where the charges are pending.

Date:      02/08/2012

_____
*Judge's signature*

        Hon. Christopher J. Burke, U.S. Magistrate Judge
_____
*Printed name and title*

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
for the

District of Delaware

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  12-22M |
| ROBERT J. MAEGERLE | ) | |
| *Defendant* | ) | |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ Robert J. Maegerle _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( X )     to appear for court proceedings;

( X )     if convicted, to surrender to serve a sentence that the court may impose; or

(   )     to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

(   ) (1)   This is a personal recognizance bond.

( ✓ ) (2)   This is an unsecured bond of $  100,000.00 _____ .

(   ) (3)   This is a secured bond of $ _____ , secured by:

     (   ) (a) $ _____ , in cash deposited with the court.

     (   ) (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it – such as a lien, mortgage, or loan – and attach proof of ownership and value)*:

        If this bond is secured by real property, documents to protect the secured interest may be filed of record.

     (   ) (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

## Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

 (1) all owners of the property securing this appearance bond are included on the bond;

 (2) the property is not subject to claims, except as described above; and

 (3) I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: 02/08/2012

_____
*Defendant's signature*

Robert J. Maegerle
_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

CLERK OF COURT

Date: 02/08/2012

_____
*Signature of Clerk or Deputy Clerk*

Approved.

Date: _____

_____
*Judge's signature*

AO 199A    (Rev. 6/97) Order Setting Conditions of Release                                                    Page 1 of ___3___ Pages

# UNITED STATES DISTRICT COURT

**District of** _____Delaware_____

United States of America

v.

## ORDER SETTING CONDITIONS OF RELEASE

_____Robert J. Maegerle_____                Case Number:  12-22-M
Defendant

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1)  The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2)  The defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing before any change in address and telephone number.

(3)  The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed.  The defendant shall appear at (if blank, to be notified) _U.S. Courthouse; 450 Golden Gate Avenue,_

_16th Floor, San Francisco, CA_ on _____3/1/2012 9:30 am_____
                                                                 Date and Time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

(  ✔  ) (4)  The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

(  ✓  ) (5)  The defendant executes an unsecured bond binding the defendant to pay the United States the sum of _____One hundred thousand_____ dollars ($ _100,000.00_ )
in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL   SERVICES   U.S. ATTORNEY   U.S. MARSHAL

✎AO 199B    (Rev. 5/99) Additional Conditions of Release                                    Page __2__ of __3__

## Additional Conditions of Release

Upon finding that release by one of the above methods will not by itself reasonably assure the appearance of the defendant and the safety of other persons and the community.

IT IS FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

(   ) (6)   The defendant is placed in the custody of:

(Name of person or organization) _____

(Address) _____

(City and state) _____ (Tel. No.) _____

who agrees (a) to supervise the defendant in accordance with all the conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

Signed: _____     _____
                             Custodian or Proxy                 Date

( ✓ ) (7)   The defendant shall:

(   ) (a)   report to the _____ ,

telephone number _____ , not later than _____

( ✓ ) (b)   execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated property:
$100,000

(   ) (c)   post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described _____ .

(   ) (d)   execute a bail bond with solvent sureties in the amount of $ _____ .

(   ) (e)   maintain or actively seek employment.

(   ) (f)   maintain or commence an education program.

( ✓ ) (g)   surrender any passport to:   Clerk of Court

( ✓ ) (h)   obtain no passport.

(   ) (i)   abide by the following restrictions on personal association, place of abode, or travel: _____

( ✓ ) (j)   avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to:

(   ) (k)   undergo medical or psychiatric treatment and/or remain in an institution as follows:

(   ) (l)   return to custody each (week) day as of _____ o'clock after being released each (week) day as of _____ o'clock for employment, schooling, or the following limited purpose(s):

(   ) (m)   maintain residence at a halfway house or community corrections center, as deemed necessary by the pretrial services office or supervising officer.

(   ) (n)   refrain from possessing a firearm, destructive device, or other dangerous weapons.

(   ) (o)   refrain from   (   ) any   (   ) excessive use of alcohol.

(   ) (p)   refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

(   ) (q)   submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.

(   ) (r)   participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the pretrial services office or supervising officer.

(   ) (s)   refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or electronic monitoring which is (are) required as a condition(s) of release.

(   ) (t)   participate in one of the following home confinement program components and abide by all the requirements of the program which   (   ) will or (   ) will not include electronic monitoring or other location verification system. You shall pay all or part of the cost of the program based upon your ability to pay as determined by the pretrial services office or supervising officer.

    (   )   (i) **Curfew.** You are restricted to your residence every day   (   ) from _____ to _____ , or   (   ) as directed by the pretrial services office or supervising officer; or

    (   )   (ii) **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the pretrial services office or supervising officer; or

    (   )   (iii) **Home Incarceration.** You are restricted to your residence at all times except for medical needs or treatment, religious services, and court appearances pre-approved by the pretrial services office or supervising officer.

(   ) (u)   report as soon as possible, to the pretrial services office or supervising officer any contact with any law enforcement personnel, including, but not limited to any arrest, questioning, or traffic stop.

(   ) (v)

(   ) (w)

(   ) (x)

DISTRIBUTION:    COURT     DEFENDANT     PRETRIAL SERVICES     U.S. ATTORNEY     U.S. MARSHAL

AO 199C   (Rev.12/03) Advice of Penalties ...          Page ___3___ of ___3___ Pages

## Advice of Penalties and Sanctions

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

The commission of a Federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to 10 years of imprisonment, and a $250,000 fine or both to obstruct a criminal investigation. It is a crime punishable by up to ten years of imprisonment, and a $250,000 fine or both to tamper with a witness, victim or informant; to retaliate or attempt to retaliate against a witness, victim or informant; or to intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;
(3) any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;
(4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

## Directions to United States Marshal

( ✓ ) The defendant is ORDERED released after processing.
(    ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judge at the time and place specified, if still in custody.

Date: _____2/8/2012_____          _____
                                        Signature of Judge

                    ___Christopher J. Burke, U.S. Magistrate Judge___
                              Name and Title of Judge

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL SERVICE   U.S. ATTORNEY   U.S. MARSHAL



AO 199A    (Rev. 6/97) Order Setting Conditions of Release                                         Page 1 of __3__ Pages

# UNITED STATES DISTRICT COURT

**District of** _____ Delaware _____

United States of America

v.

Robert J. Maegerle
**Defendant**

## ORDER SETTING CONDITIONS OF RELEASE

Case Number: 12-22-M

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1) The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2) The defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing before any change in address and telephone number.

(3) The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed. The defendant shall appear at (if blank, to be notified)  U.S. Courthouse; 450 Golden Gate Avenue,
_____
Place
16th Floor, San Francisco, CA   on   _____ 3/1/2012 9:30 am _____
Date and Time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

( ✔ ) (4) The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( ✓ ) (5) The defendant executes an unsecured bond binding the defendant to pay the United States the sum of
_____ One hundred thousand _____ dollars ($ _100,000.00_ )
in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL   SERVICES   U.S. ATTORNEY   U.S. MARSHAL

🖎AO 199B   (Rev. 5/99) Additional Conditions of Release

## Additional Conditions of Release

Upon finding that release by one of the above methods will not by itself reasonably assure the appearance of the defendant and the safety of other persons and the community.
IT IS FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

(   ) (6)   The defendant is placed in the custody of:

    (Name of person or organization) _____

    (Address) _____

    (City and state) _____ (Tel. No.) _____

who agrees (a) to supervise the defendant in accordance with all the conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

Signed: _____     _____

                                 Custodian or Proxy                    Date

( ✓ ) (7)   The defendant shall:

  (   ) (a)   report to the _____ ,

            telephone number _____ , not later than _____ .

  ( ✓ ) (b)   execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated property:
              $100,000

  (   ) (c)   post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described

  (   ) (d)   execute a bail bond with solvent sureties in the amount of $ _____ .

  (   ) (e)   maintain or actively seek employment.

  (   ) (f)   maintain or commence an education program.

  ( ✓ ) (g)   surrender any passport to:   Clerk of Court

  ( ✓ ) (h)   obtain no passport.

  (   ) (i)   abide by the following restrictions on personal association, place of abode, or travel:

  ( ✓ ) (j)   avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to:

  (   ) (k)   undergo medical or psychiatric treatment and/or remain in an institution as follows:

  (   ) (l)   return to custody each (week) day as of _____ o'clock after being released each (week) day as of _____ o'clock for employment, schooling, or the following limited purpose(s):

  (   ) (m)   maintain residence at a halfway house or community corrections center, as deemed necessary by the pretrial services office or supervising officer.

  (   ) (n)   refrain from possessing a firearm, destructive device, or other dangerous weapons.

  (   ) (o)   refrain from   (   ) any   (   ) excessive use of alcohol.

  (   ) (p)   refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

  (   ) (q)   submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.

  (   ) (r)   participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the pretrial services office or supervising officer.

  (   ) (s)   refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or electronic monitoring which is (are) required as a condition(s) of release.

  (   ) (t)   participate in one of the following home confinement program components and abide by all the requirements of the program which   (   ) will or (   ) will not include electronic monitoring or other location verification system. You shall pay all or part of the cost of the program based upon your ability to pay as determined by the pretrial services office or supervising officer.

    (   )   (i)   **Curfew.** You are restricted to your residence every day   (   ) from _____ to _____ , or   (   ) as directed by the pretrial services office or supervising officer; or

    (   )   (ii)   **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the pretrial services office or supervising officer; or

    (   )   (iii)   **Home Incarceration.** You are restricted to your residence at all times except for medical needs or treatment, religious services, and court appearances pre-approved by the pretrial services office or supervising officer.

  (   ) (u)   report as soon as possible, to the pretrial services office or supervising officer any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

  (   ) (v)

  (   ) (w)

  (   ) (x)

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL SERVICES   U.S. ATTORNEY   U.S. MARSHAL

AO 199C (Rev.12/03) Advice of Penalties . . .   Page 3 of 3 Pages

## Advice of Penalties and Sanctions

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

The commission of a Federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to 10 years of imprisonment, and a $250,000 fine or both to obstruct a criminal investigation. It is a crime punishable by up to ten years of imprisonment, and a $250,000 fine or both to tamper with a witness, victim or informant; to retaliate or attempt to retaliate against a witness, victim or informant; or to intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;
(3) any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;
(4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Signature of Defendant

_____
Address

_____
City and State          Telephone

### Directions to United States Marshal

( ✓ ) The defendant is ORDERED released after processing.
(   ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judge at the time and place specified, if still in custody.

Date: _____2/8/2012_____          _____
Signature of Judge

Christopher J. Burke, U.S. Magistrate Judge
Name and Title of Judge

DISTRIBUTION: COURT   DEFENDANT   PRETRIAL SERVICE   U.S. ATTORNEY   U.S. MARSHAL

CLOSED

# U.S. District Court
## District of Delaware (Wilmington)
### CRIMINAL DOCKET FOR CASE #: 1:12-mj-00022 All Defendants
### Internal Use Only

Case title: USA v. Maegerle

Date Filed: 02/08/2012
Date Terminated: 02/08/2012

Assigned to: Unassigned

**Defendant (1)**

**Robert J Maegerle**
*TERMINATED: 02/08/2012*

represented by **James E. Liguori**
Liguori, Morris & Yiengst
46 The Green
Dover, DE 19901
(302) 678-9900
Email: jliguori@lmylaw.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**

None

**Disposition**

**Highest Offense Level (Opening)**

None

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**

18:1832(a)(2)&(4) - CONSPIRACY
AND ATTEMPTED THEFT OF
TRADE SECRETS (COUNTS II & V);
18:1832(a)(2)& (2) - CONVEYING
TRADE SECRETS; AIDING &
ABETTING (COUNT VIII); 18:1512
(b)(1) - CONSPIRACY TO TAMPER
WITH WITNESSES AND EVIDENCE

**Disposition**

**Plaintiff**

**USA**

represented by **Robert F. Kravetz**
U.S. Attorney's Office
The Nemours Building
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046
(302)573-6277 Ext 133
Fax: (302)573-6220
Email: robert.kravetz@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/08/2012 | | Arrest (Rule 40) of Robert J Maegerle (dlk) (Entered: 02/09/2012) |
| 02/08/2012 | 1 | Copy of charging pleadings ( Superseding Indictment ) received from Northern District of California as to Robert J Maegerle. (Original SEALED - to be maintained in the Clerk's Office for safekeeping.) (dlk) (Entered: 02/09/2012) |
| 02/08/2012 | 2 | REDACTED VERSION of D.I. 1 Pleadings from Other Distict by USA as to Robert J Maegerle (dlk) (Entered: 02/09/2012) |
| 02/08/2012 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Initial Appearance in Rule 5(c)(3) Proceedings as to Robert J Maegerle held on 2/8/2012. Deft. was present with counsel, Greg Morris, Esquire. Govt. moved to have Deft. released on $100,000.00 unsecured bond. Defendant signed waiver of Identity Hearing. The Court set bond at $100,000.00 unsecured with conditions of release. Deft. is Ordered to appear at USDC/NDCA (San Francisco) on 3/1/2012 at 9:30 for proceedings before the Hon. Elizabeth D. Laporte. (dlk) (Entered: 02/09/2012) |
| 02/08/2012 | 3 | WAIVER of Rule 5(c)(3) Hearings in this district by Robert J Maegerle (dlk) (Entered: 02/09/2012) |
| 02/08/2012 | 4 | ORDER as to Robert J Maegerle requiring appearance in the Northern District of California (San Francisco) on 3/1/2012 at 9:30 a.m. before the Honorable Elizabeth D. Laporte. Signed by Judge Christopher J. Burke on 2/8/2012. (dlk) (Entered: 02/09/2012) |
| 02/08/2012 | 5 | Unsecured Appearance Bond Entered as to Robert J Maegerle in amount of $ 100,000.00, executed by Deputy Clerk. (dlk) (Entered: 02/09/2012) |
| 02/08/2012 | 6 | ORDER Setting Conditions of Release as to Robert J Maegerle (1) $100,000.00 unsecured (SEALED original to be maintained in the Clerk's Office for safekeeping.) Signed by Judge Christopher J. Burke on 2/8/2012. (dlk) (Entered: 02/09/2012) |
| 02/08/2012 | 7 | REDACTED VERSION of D.I. 6 Order Setting Conditions of Release by |

| | | Robert J Maegerle (dlk) (Entered: 02/09/2012) |
|---|---|---|
| 02/08/2012 | | (Court only) *** Case Terminated (dlk) (Entered: 02/09/2012) |
| 02/09/2012 | | EXIT ORIGINAL RECORD and a certified ocpy of the docket entries to the Northern District of California. (dlk) (Entered: 02/09/2012) |

CERTIFIED:
AS A TRUE COPY:
ATTEST:
PETER T. DALLEO, CLERK
BY _____
Deputy Clerk